## Miller *versus* Gilleland.

Though an alteration of a promissory note which does not disturb *its legal effect* does not avoid it, yet, in a suit by the payee against the surety in a note under seal, it was *held*, that the alteration of the date of the note from 1836 to 1838, made at the request of the payee in the presence of the surety, but without his assent, avoided the note as to the surety.

ERROR to the Common Pleas of *Adams county.*

This was an action of debt brought in the Court of Common Pleas of Adams county to November Term, 1848, by Fleming Gilleland *v.* Thomas C. Miller, to recover the amount of a joint and several note, under seal, bearing date the 24th September, 1838, signed by Samuel Witherow and Thomas C. Miller, the defendant, for $322.56, payable *three months* after date, with interest, to Fleming Gilleland or order. Thomas C. Miller was surety in the note.

The note originally was dated 24th September, 1836. The figure 6 in the year, was changed by the obligee, Fleming Gilleland, to 8, before suit was brought.

The plaintiff declared, first, on the instrument as it originally existed; and secondly, on it as it then was, but setting forth specially the alteration by obligee, after execution and delivery, averring that it was done to correct a mistake in the date of the note originally, and that the date to which it was altered, was the true date when it was given.

To this the defendant plead *non est factum*, and payment with leave, &c.; and on those pleas, the cause came on for trial, before WATTS, J., at a special Court on the 17th October, 1849. The

[Miller *v.* Gilleland.]

question was as to the effect of the alteration in the date of the note, made by Gilleland, the obligee; on his right to recover upon the note as thus altered.

On the trial, a witness testified that he, Gilleland, and Miller the defendant, were together in 1839 or 1840. Gilleland had the note in his hand, and said there was a mistake in the date, that it had been dated 1836, instead of 1838. He inquired if there would be anything wrong in altering it. *Witness* inquired whether Witherow knew anything about it. Gilleland said there was no difficulty about it; that he had told Witherow, who said it'was wrong. Gilleland then lifted a pen for the purpose of making the alteration, but handed it to the witness, and requested him to make it, which he did. Miller was present and heard the conversation, and said, "he knew nothing about it, and could say nothing about it." This remark was made before the alteration was made. The body of the note was in the handwriting of Witherow.

To show that a mistake in the date existed, the plaintiff's counsel offered in evidence a check of Fleming Gilleland, on the Bank of Gettysburg, dated 24th September, 1838, for $322.56 (the parties admitting that the money was paid by the Bank on the check, but to whom paid not admitted): the check was payable to bearer—to be followed by proof that it is also in the handwriting of Samuel Witherow, and taken from the same paper on which the note was written. This was. admitted, and exception was taken.

The check was proven to be in the handwriting of Witherow, the principal in the note.

The defendant gave some evidence in support of the plea of payment.

WATTS, J., charged the jury as follows:

"The plaintiff contends, that on the 24th of September, 1838, he loaned $322.56 to Samuel Witherow, or to him and Thomas C. Miller, and gave his check on the Bank for the money, and that Samuel Witherow, in writing the note for the money, dated it 24th September, 1836, instead of 1838; and that after the note became due and payable he mentioned to Thomas C. Miller that a mistake had been made in the date, and asked him if he might not alter it, to which the said Thomas C. Miller replied, that "he knew nothing about it, and could say nothing about it." The question in the cause is, whether this alteration, thus made, avoids the instrument and prevents the plaintiff from recovering in this action.

"We are of opinion that if the jury believe that the note was actually given by Witherow and Miller on the 24th September, 1838, and that it was by mistake dated 1836, and that the altera-

[Miller *v.* Gilleland.]

tion was made under the circumstances stated by the witness in his testimony, the plaintiff is entitled to recover. We refer the facts to the jury with this instruction, that if the alteration was made to correct a mistake, and it did but correct a mistake, it will not prevent the plaintiff's recovery. But if the note was actually given in 1836, it is not for the jury to inquire what was the purpose for which the alteration was made. It avoids it, and the act or conduct of Thomas C. Miller, as proved, was not such an assent as would justify the plaintiff in making the alteration."

To a point submitted on part of defendant he replied: "We think that the answer of Thomas C. Miller, as contained in this point, was not such a consent as, under other circumstances, would have justified the alteration of the instrument by the payee. But as we have already said in our general charge, if it was made to correct a mistake made when the note was given, it did not vitiate the note, and therefore the plaintiff's right to recover is not put upon the ground of the defendant's consent to the alteration."

Verdict was rendered for plaintiff, for the amount of the note.

Error was assigned to the charge and answer; and to the admission in evidence of the check and note.

*Miller*, for plaintiff in error.—The alteration was made after the maturity of the note, and the mere silence of T. C. Miller was not an acquiescence in the alteration: 1 *Barr* 457; 5 *Id.* 412; 2 *Id.* 54; 14 *Ser. & R.* 423.

The alteration of a bond *in a material part*, without the consent of the obligor, avoids it: 4 *Term Rep.* 320; 3 *Yeates* 392, U. S. *v.* Russell; 10 *Ser. & R.* 164, Marshall *v.* Gougler; 11 *Mass.* 309; 8 *Barr* 518; 4 *Whar.* 20; *Chitty on Con.* 297; 4 *W. & Ser.* 438; 3 *Barr* 326; 1 *U. S. Digest*, p. 142, pl. 41, and cases there cited. Also 7 *Ser. & R.* 507; 1 *Brod. & Bing.* 134; 2 *Barr* 55; 2 *Starkie on Ev.* 271.

The alteration in the note referred to in the case of Gardinier *v.* Sisk, 3 *Barr* 326, was an immaterial one; it did not disturb *the legal effect* of the obligation.

*The motive* in making the alteration is not a material subject of inquiry; 10 *Ser. & R.* 168–9; 4 *Whar.* 20. A bond or deed cannot be altered to correct a mistake in the date without the consent of the obligor or grantor: 2 *New Hamp.* 543; 3 *M. & P.* 339, Adams *v.* Bateson; 6 *Bing.* 110.

*Durkee*, with whom were *Cooper* and *Stevenson*, for defendant. —The alteration of the date of a note, *to correct a mistake*, does not change the legal effect of the obligation, and does not avoid it: 3 *Barr* 326, Gardinier *v.* Sisk; 41 *Law Lib.* 598; 21 *Eng.*

[Miller *v.* Gilleland.]

*Com. Law* 376 ; 12 *East* 471 ; 3 *Esp.* 246 ; *Co. Litt.* 225, folio B. ; 8 *Barr* 379, 381.

Gilleland having called Miller's attention to the fact that a mistake existed in the date of the note, which he proposed to correct, and Miller having stood by without objecting, while the alteration was making, is precluded from taking advantage of it ; especially as Gilleland's intention was honest, and Miller could in no wise be injured by the act : 1 *Story's Eq. Jur.* 385–391 ; *Story on Agency,* sec. 90–95 ; 17 *Eng. Com. L.* 452.

"The SILENCE of one party when the other asserts a fact, is evidence of the TRUTH of the assertion to go to the jury." 6 *Barr* 366, McClenkan *v.* McMillan.

The opinion of the Court, filed September 27, was delivered by

GIBSON, J.—The conveyance of an estate which lies in livery, and not in grant, is not avoided by an alteration even in a material part of it ; for the title, being vested by a deed having by statute the force of livery of seisin, can be revested only by a reconveyance : *Bull. N. P.* 267. But an alteration of a bond, bill, or note, stands on a different principle. When it is made by the voluntary act of the creditor, and increases or injuriously affects the responsibility of the debtor, whatever the motive for it, the security is gone. The rule is founded in policy, to protect the debtor from acts prejudicial to him, hard to be guarded against, and done in his absence, and without his agency or consent : but it is inapplicable to an alteration which leaves the legal effect of the instrument as it was before : as was held in Zouch *v.* Clay, 1 *Vent.* 185 ; Hunt *v.* Adams, 6 *Mass.* 519 ; Nevins *v.* De Grand, 15 *Mass.* 436 ; and some other cases. Where there can be no wrong, the policy of protection has no place. But in no other case can the *bona fides* of an unauthorized alteration of a security *in the hands of the holder,* purge it of its ostensible impurity.

There is a class of cases apparently inconsistent with the rule just indicated, but not actually so. In those, an interlineation or an erasure has been explained by showing it to have been made *before* the bill had been accepted, or the note negotiated ; or that it had received the assent of the parties interested : but in this respect it has received no more indulgence than an erasure or alteration of a deed before delivery. Of this class are Henman *v.* Dickenson, 5 *Bingh.* 183 ; Knight *v.* Clements, 8 *Adolph. & El.* 221 ; Bishop *v.* Chambre, *M. & M.* 116 ; Clifford *v.* Parker, 2 *Mann. & Grang.* 910, and Cariss *v.* Tattersall, *Id.* 890. In England, there is still another class, decided on the Stamp Acts, which furnish no rule for the protection of the debtor. The question had regard to the protection of the revenue ; and parol evidence was received to show that an alteration of a date was not made to save the expense

[Miller v. Gilleland.]

of a new stamp. Of this class is Kershaw v. Cox, 3 *Esp. N. P. C.* 246, and others which might be quoted.

On the subject of alteration in the body of a note, the cases are harmonious; but on the subject of adding to the evidence of attestation, they are not entirely so. In Adams v. Frye, 3 *Metc.* 103, it was said, that if an obligee *fraudulently* procure a person who was not present at the execution to subscribe as a witness, he destroys his security; but it was further said that this consequence may be avoided by proving the act to have been done honestly. And this for two reasons: that as the bond is complete without a subscribing witness, the obligor cannot be harmed by putting a name to it which is merely surplusage; but that if the name be put to it with a foul design, the obligee should be punished for his turpitude. The first of these is, evidently, fallacious; for proof of the handwriting of the supposititious witness, would, in the event of his death or absence, be *prima facie* evidence of execution; and in that aspect the obligor might be as much injured by an alteration in the clause of attestation, as by an alteration in the body of the bond. And the second is equally so: for if loss of the security be a penalty for an abortive attempt at fraud, it ought to be inflicted for a bungling attempt to alter the effect of the instrument, which failed only for want of capacity to accomplish it. But whatever the dictum in Adams v. Frye, it is enough for the occasion that the point was ruled differently in Marshall v. Gougler, 10 *Ser. & R.* 164, which furnishes a precedent that we are bound to follow.

On the abstract principle, all our own decisions are to the same effect, and they stand as clear on principle as they do on precedent. The law no more abhors parol evidence to explain the words of a written contract, than it abhors it to show what were the words themselves when the contract was executed. The danger from it, in either way, is the same. A chancellor, in the exercise of his extraordinary discretion, doubtless receives it *to reform an instrument*; but cautiously, and only in clear cases of accidental omission or mistake, and where the conduct of the party seeking relief is above suspicion. But to tolerate an attempt to reform a security by the rash, and it may be secret, act of the creditor, would change the position of the debtor, and subject him to risk and trouble which ought not to be imposed on him. It would compel him to encounter the perils of parol proof, not only to establish the fact of alteration, but to show what the instrument originally was; and, that done, to meet the creditor's proof of *bona fides*. Ought a faultless party to be involved in such a contest, out of tenderness to an ignorant and a presumptuous creditor; or be exposed to the untruthfulness of witnesses, or the misconceptions of jurors? It is a familiar principle, that a particular hardship shall be borne by him whose act was the cause of it.

[Miller *v.* Gillcland.]

The alteration of the date, in this instance, did not retard the day of payment, and consequently did not discharge the defendant as a surety, by giving time to the principal; but it is not easy to imagine how an alteration of the date of a security for money, may not be detrimental to the debtor. If the day of payment be accelerated by it, the debtor loses a part of the time for which he stipulated, and the computation of interest is affected by it; if it be retarded, the starting of the statute of limitations, or the presumption of payment from lapse of time, is also retarded by it; and such alterations have been made to evade the one or the other. As the plaintiff in this case brought suit within six years of the true date, the defendant could not be prejudiced in that respect, further than the risk and expense incurred in showing the truth— which is certainly a substantive injury to him—but the inquiry has regard to the possible effect of the alteration when it was made, and not to its present effect, as things have turned up. If the note was avoided by it—and no one can doubt it—it is still void; and so the jury ought to have been directed.

Judgment reversed.

Lowrie, J., and Woodward, J., dissented, and the dissenting opinion of Lowrie, J., was filed.