# Nesbitt, Assignee, Appellant, *v.* Turner.

[Marked to be reported.]

*Practice, Supreme Court—Assignment of error—Evidence.*

An assignment of error to the rejection of testimony which is subsequently admitted is improper.

*Bond—Erasures—Alterations—Burden of proof.*

A person who offers in evidence a bond, with erasures and alterations upon its face, is bound to explain the erasures and alterations to the satisfaction of the jury.

*Married women—Bond—Ratification after discoverture.*

A bond executed by a married woman will not become binding upon her after discoverture by a mere naked ratification by her, or by a simple acknowledgment of her signature.

*Principal and surety—Alteration of contract.*

When the principal and creditor modify a contract, it is fatal to the validity of the contract as against the surety whose assent has not been obtained, even if it be for his benefit, or if it do him no harm.

*Evidence—Execution of bond—Alteration—Rule of court.*

In an action on a bond, where there is a manifest alteration on the face of the instrument, which does not appear in the copy filed, the rule of court, providing that it shall not be necessary for plaintiff to prove the execution of the bond, unless defendant, at or before the time of filing his plea, shall have denied the execution thereof, does not apply, and the burden of explaining the alteration is on plaintiff.

*Cashier's bond—Alterations and erasures—Evidence.*

A cashier's bond upon which suit was brought showed that in the date the words " 28th February " were written over an erasure, and the year

was changed from 1871 to 1873. In 1871, the surety on the bond was a married woman. She became discovert in 1872, by the death of her husband. On June 16, 1873, the following entry appeared on the minutes of the bank: "The bond of the cashier for $20,000 signed by Mary Dietrick and Mrs. S. G. Turner with proper corrections was read by the vice president, and taken in charge by him." There was no evidence whatever as to the date when Mrs. Turner signed the bond. The subscribing witness testified that on Feb. 28, 1873, Mrs. Turner was at the bank, and acknowledged her signature to the bond, and that the cashier handed the witness the bond, and requested him to mark the date of his witnessing it, which he did by writing the date under his signature. There was no evidence that Mrs. Turner knew that the date of the bond had been changed, or that any of the alterations had been made. The trial judge left it to the jury to determine whether the date of the bond had been altered without the surety's knowledge or consent, and whether she had re-executed and redelivered the bond in 1873. *Held*, that a verdict and judgment for the surety should be sustained.

*Admission of counsel.*

An admission of counsel unintentionally made will not be permitted to defeat a party's right.

Argued April 13, 1893. Appeal, No. 306, Jan. T., 1893, by plaintiff, Abram Nesbitt, assignee for the benefit of creditors of the Plymouth Savings Bank, from judgment of C. P. Luzerne Co., Feb. T., 1889, No. 237, on verdict for defendant, Mrs. S. G. Turner. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Assumpsit on bond of surety for bank cashier.

At the trial, before WOODWARD, J., plaintiff offered in evidence the bond in suit which showed the words "28th February" written over an erasure and the figure "3" written over "1" of the year 1871. Defendant objected to the admission of the bond, and asked leave to add the plea of non est factum.

Plaintiff's counsel objected to the amendment of the plea at this time, for the reason that, under the rule of court, it was necessary for the defendant, before filing the plea, if she intended to set up this objection, to have denied, by affidavit filed, the execution of the bond. Defendant's objection to the bond was as follows: Defendant's counsel objects to the admission of the bond in evidence, because the date of the bond has been changed by erasure, which plainly appears upon the face of the bond, and this change not being noted in the attesta-

tion clause before execution, defendant's counsel not having seen this original bond before, having seen only the copy filed.

The Court: I am inclined to think that in regard to filing a copy, where there is a manifest alteration on the face of an instrument under seal, and that alteration is not described in any way and does not appear in the copy filed,—the objection may be made at the trial and plaintiff called upon to explain such alteration, especially where there is no subscribing witness to explain the apparent alteration. That would be my view of the case at present. If that view results under the circumstances in a surprise, we will of course take that into consideration, because the question of pleading is somewhat modified by recent legislation. You can therefore either proceed to call the subscribing witness and explain this transaction, or plaintiff may be surprised at the course the case has taken and secure further time for trial. The offer simply of the bond itself being objected to, the bond having been examined by the court, the objection is sustained, exception noted and bill sealed for plaintiff. [1]

Counsel for defendant made the following admission of record: "Admitted that when this bond was executed the defendant was a widow, the widow of Hon. S. G. Turner, deceased, and that she is still unmarried."

The court charged in part as follows:

" [On the 19th day of July, 1871, William W. Dietrick was elected cashier of this bank. On the 18th of September, 1871 —some two months later, as appears by a minute properly entered in the book of the bank, the amount of the cashier's bond was fixed at $20,000. And here the history of the bond for a time stops. On the 16th of June, 1873, it seems, from an entry in the minute book of the directors at a meeting of the board of directors of that date, June 16, 1873, a bond of the cashier was submitted to the meeting, and the bond is described corresponding to the one now produced in court, and action was taken with reference to it as appears from an entry on page 103 of the minute book 1, to which I now call your attention: ' A meeting of the directors of the Plymouth Savings Bank was held at their bank rooms on Monday, June 16, 1873, present, Peter Shupp, J. J. Shonk, —— Davenport, J. B. Pierce and Frank Turner.' The minutes of the last meeting were approv-

ed, etc. Then follows this entry: 'The bond of cashier for $20,000,' originally followed by the words, 'was then signed,' but the word 'was' and the word 'then' erased, so that it reads now, 'the bond of cashier for $20,000, signed by Mary Dietrick and Mrs. S. G. Turner'—then comes an interlineation 'with proper corrections'—'was read by the vice president and taken in charge by him. There being nothing further, adjourned.' The minutes are signed W. W. Dietrick.

"It is alleged that this bond originally bore the date of 1871 and that the date in figures, '28,' and the word 'February' are written over erasures, the exact character of which cannot be ascertained upon inspection. The year 1871, however, has evidently been changed to 1873, as you see upon inspection of the bond, which will be sent with you to your room. If, gentlemen, you shall find from an inspection of the bond that these alterations were made, then the question arises, were they made with the knowledge and the assent of Mrs. Turner, the defendant? If not made in that way, she would be relieved of her liability on this bond as a surety for her brother.] [2] Understand me, gentlemen. If you find from the face of the bond that its date has been altered from some day in 1871 to the 28th day of February, 1873, without the knowledge and consent of Mrs. Turner, as shown by the evidence in the case, then her liability on this bond ceases.

"[But we come now to another branch of this case which it is my duty to present to you, because it is a legal view of the case which naturally arises and must be disposed of. Suppose you find from the evidence that Mrs. Turner was aware of and assented to the change of date and knew that the original bond was, for some reason, to be altered as to its date, what would then be her position in this case? Samuel G. Turner, the husband of the present defendant, as shown by the evidence, died in December, 1872; therefore, through the whole of the year 1871, Mrs. Turner was a married woman, and under all the legal disabilities imposed upon her as such under our law. Under our Pennsylvania law she, as a married woman, was incapacitated in 1871 from making a bond or becoming surety upon a bond like the one involved in this controversy, and, as to her, such a bond was not only voidable by reason of her being married, but was absolutely void. Furthermore, it is our duty

to say to you as matter of law that an instrument or contract absolutely void cannot be rendered valid and binding by subsequent ratification after the removal of the disability. In other words, gentlemen, applying these legal principles to this case, if you shall find from an inspection of this bond and from the evidence in the case, that Mrs. Turner signed it on some day in the year 1871, and then acknowledged it to be her act and signature in 1873, as testified to by Mr. Lance, the subscribing witness, who says he did not see her sign her name, but heard her admit her signature, it would still be such an instrument as she could not ratify, being originally void under our law, a bond signed by a married woman as a surety, and even her knowledge and acquiescence as of the other date, February 28, 1873, would not make it valid and binding as an obligation against her. If you find this to be the truth of this case in regard to this bond, your verdict should be in favor of the defendant."] [3]

Plaintiff's point was among others as follows :

" 1. If the jury find that on the 28th of February, 1873, the bond in suit was witnessed by W. W. Lance, *at the request and* in the presence of the defendant, Mrs. S. G. Turner, and William W. Dietrick, as the bond which they proposed to furnish the directors of the bank in response to the action of the bank fixing the cashier's bond at $20,000, then no matter whether Mrs. Turner, the defendant, actually signed the bond on the 28th of February, 1873, or on some prior day,—it nevertheless became her bond, and fixed her liability as bondsman, if it were afterwards delivered to the directors and accepted by them as their cashier's bond."

The court crossed out its four italicized words and answered the point as follows :

" We say to you that point may be affirmed with the single qualification which we referred to in our general charge, that it would be good unless originally void,—in other words, unless void at the time it was originally signed, because of her being a married woman ; and then her ratification would go for naught ; because a void instrument cannot be ratified by subsequent assent." [5]

Defendant's points were among others as follows :

" 5½. Under the evidence in the case Mrs. Turner was a mar-

ried woman in 1871. If the jury therefore find that the date of the bond in question was changed from some time in 1871 to February 28, 1873, this change was material, because the bond would not be binding upon her, being a married woman at the time, and the legal presumption therefore is that the erasure was made after Mrs. Turner signed the bond and without her knowledge and consent. There being no evidence on the part of the plaintiff to overcome this presumption, the jury must therefore find for the defendant. *Answer :* We affirm that point as to the first proposition contained in it and decline to affirm the subsequent or concluding part of it, but call your attention again to what we said early in our charge, that if the jury believe that the date of the bond in question was changed from some time in 1871 to February 28, 1873,—that at that date in 1871 Mrs. Turner was a married woman, as shown by the evidence,—then the bond was void as to her, and there can be no recovery in this case." [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting bill of exceptions; (2–5) instructions, quoting them; and (6) in submitting to the jury the question of whether defendant put her signature to the bond in suit in 1871 when she was a married woman, as the prevailing point in the case, notwithstanding the admission of record of defendant's counsel, quoting the admission.

*Lyman H. Bennett, James L. Lenahan* with him, for appellant.—There is nothing in the appearance of the bond to justly excite a suspicion either in fraud of its execution, or of doubt as to when such execution took place, particularly as the alteration is noted in the attestation clause: Greenl. Ev. § 564; Jordan v. Stewart, 23 Pa. 249.

The admission by counsel, with the conceded fact shown by defendant, and repeatedly made use of by the court below in the charge, to wit, that defendant's husband died in December, 1872, clearly and conclusively established the fact that this bond was executed by the defendant on the 28th of February, 1873—she being then a widow, and the final or altered date of the bond then existing as it now exists.

The uncontradicted testimony of the witness, Lane, of the execution of this bond by the defendant of February 28, 1873, in its present condition, with its final or altered date, and with her full knowledge of such alteration, was of itself sufficient to clearly warrant a jury in finding that this bond was legally executed by defendant on Feb. 28, 1873, and, therefore, when subsequently delivered to the bank in June, 1873, became her valid obligation, notwithstanding the manuscript thereof may have been originally drawn and dated in 1871, and defendant may have signed her name to it at that time.

The deed of a married woman, executed and delivered by herself and husband—and a nullity because in her acknowledgment the terms of the act of assembly in such cases had not been followed—might be ratified by her delivery of the deed to the grantee after the death of her husband : Jourdan v. Jourdan, 9 S. & R. 268 ; Carter's Lessee v. Straphan, 1 Cowp. 201 ; Hudson v. Revett, 15 E. C. L. 625 ; Doe v. Howland, 8 Cowen, 282 ; Brown v. Bennett, 75 Pa. 420 ; Paul v. Stackhouse, 38 Pa. 304 ; Bank v. Yard, 143 Pa. 149 ; Hemphill v. McClimans, 24 Pa. 367.

*William S. McLean,* for appellee.—Defendant had a right, notwithstanding the rule of court invoked by appellant, to object to the admission of the bond in evidence until the erasures and alterations were explained, because the rule of court so invoked was not applicable : Nagle's Est., 134 Pa. 31.

The erasure of the words " at the request and " in the appellant's first point by the court did the appellant no harm, and was acquiesced in by appellant's counsel.

Appellant ought not to complain of the admission inadvertently made by defendant's counsel that when the bond was assigned defendant was a widow.

The bond was absolutely void, even if there had been evidence to establish the fact that defendant had knowledge of and consented to the erasures therein, because there was no consideration to support ratification : Brown v. Bennett, 75 Pa. 420 ; Trout v. McDonald, 83 Pa. 147 ; Conklin v. Bush, 8 Pa. 517 ; Endlich & Richards on Married Women, § 193.

If the court below did err in holding that the bond could not be enforced, even if defendant had knowledge of and consent-

ed to the erasures, no harm was done appellant thereby : Allen
v. Rostain, 11 S. & R. 373 ; Worrall v. Pile, 132 Pa. 529 ; Best,
Ev., Morgan's Notes, § 402; Selser v. Roberts, 105 Pa. 245.

OPINION BY MR. JUSTICE THOMPSON, May 22, 1893 :

The appellant as assignee of the Plymouth Savings Bank
brought this action against appellee upon a bond alleged to
have been given by her to it conditioned for the faithful per-
formance of the duties of its cashier, W. W. Dietrick, her
brother. In September, 1871, it appears by the minutes of
the Savings Bank that the amount of the bond required to
be given by its cashier for the faithful performance of his du-
ties was fixed at $20,000. No further action seems to have
been taken by its board of directors until June 16, 1873, when
the following entry appears upon its minutes : " The bond of
cashier for $20,000," followed by " was then signed by Mary
Dietrick and Mrs. S. G. Turner." The words " was " and
" then " were erased and the words " with proper corrections "
interlined. So that it, as corrected, then read as follows, viz. :
" The bond of the cashier for $20,000 signed by Mary Dietrick
and Mrs. S. G. Turner with proper corrections was read by the
Vice President and taken in charge by him." This bond upon
which suit has been brought upon examination shows altera-
tions. The words " 28th February " are written over an eras-
ure, and the figure " 3 " is written over " 1 " of the year 1871,
and thus it is made to appear as if dated ".February 28, 1873."
In 1871 the appellee was the wife of S. G. Turner, who died
subsequently in 1872. When the bond was offered in evidence
by appellant an objection was made to it and sustained, because
it showed upon its face alterations, but subsequently, on proof
by a subscribing witness, it was admitted. The first assign-
ment of error relates to the action of the court in sustaining
the objection in the first instance, but as it was subsequently
admitted it would seem hardly necessary to consider this assign-
ment of error : Worrall v. Pile, 132 Pa. 529. As this however
is earnestly pressed by appellant it may be proper to say that
as the alterations in question cast a suspicion upon the instru-
ment, the burden of proof was upon the appellant to explain
them. In Jordan v. Stewart, 23 Pa. 249, it is said : " But when
a contest occurs, and the instrument is offered in evidence, the

question at once arises, whether the alteration is beneficial to the party offering it; if it be not, as in the instance of a bond or note altered to a less sum, the prima facie presumption is unchanged; if it be, as was the case here, we do not presume a forgery, but we hold the party, offering it in evidence and seeking advantage from it, bound to explain the alteration to the satisfaction of a jury. The initiative and the burden of proof are thrown upon him." In the case of Hartley v. Corboy, 150 Pa. 28, the words in a promissory note were originally " four months," and " ninety days " was written over them. Mr. JUSTICE GREEN in considering the cases upon the subject said: " In these circumstances the case comes clearly within the operation of all our decisions upon this class of cases, and it is at once manifest that, when the note was offered in evidence without any explanation of the visible and material alterations, it should have been promptly rejected," and following this he considers the cases upon this subject.

But the appellant contended that in the attestation clause the erasures are noted because the witness wrote under his name February 28, 1873. This date of witnessing does not indicate in any manner a purpose to note erasures or alterations made before execution, and the copy filed not showing evidence of alterations and erasures thus misled the appellee and she filed no affidavit. The learned trial judge therefore under these circumstances was not guilty of error in requiring appellant to make proof of the execution of it.

When this bond was actually signed does not appear by the proofs, but clearly must have been prior to the minute of the bank already referred to. The alteration of the words " was then signed" and the insertion of the words " with proper corrections " indicate that it was signed before that date. As there is no proof upon the subject and as the paper originally bears date in 1871, and as it is not probable that a paper with no signatures should be preserved from 1871 to 1873, there is a reasonable presumption that the paper was signed at the time of the original date of the instrument. But the learned trial judge left if to the jury to find whether the date of the bond had been altered without appellee's knowledge or consent. By their verdict they have found the date was 1871, and that it was altered without her knowledge or assent.

During 1871 the appellee's husband was alive and this bond then executed by her as a surety was absolutely void. If thus absolutely void, a naked ratification by her after discoverture did not make it binding upon her. If therefore in 1873 when discovert she simply acknowledged her signature, it was not sufficient to make her liable upon it. In Brown v. Bennett, 75 Pa. 423, it was held that the receipt of an installment after discoverture was in fact a redelivery of the instrument, but it was there said that a naked ratification after discoverture would not avail, and that a mere admission of liability might not be sufficient. In Buchanan v. Hazzard, 95 Pa. 243, it was held that a married woman's deed is absolutely void and that she cannot be estopped by any subsequent act of ratification, and that nothing but a new deed subsequently acknowledged could avail. In Glidden v. Strupler, 52 Pa. 403, it is said: " The contract to convey being absolutely void because of incapacity, its ratification is equally forbidden unless by deed in the mode prescribed by the statute. No multiplication of deeds (and they are the most solemn acts in pais by which title can be transferred) will serve to ratify the void conveyance, unless made according to the statutory direction. Much less can express ratification by parol or expressions of satisfaction infuse life into that which has no vitality. How, then, is it possible mere acts can be more efficacious that merely indicate the intention to transfer, which the writing has already expressed in terms explicit and emphatic? Acquiescence in, or acknowledgment of the invalid act, cannot be invested with greater virtue or vigor than the deed itself by which the act was done. The policy of the law which denies the capacity to do the act as clearly denies the capacity to confirm it except in the legal mode."

It is however argued that Jourdan v. Jourdan, 9 S. & R. 268, is an authority for ratification in this case. There the offer was made to prove that, after the death of the husband, she, the wife, had delivered the deed, and as she had actually delivered the deed after discoverture it was held to be error not to permit proof of the fact. It is clear that the scope of the proof was to show an actual delivery of the deed as her deed when she had become discovert. In the present case, while appellee was in the bank and standing behind the coun-

ter she simply acknowledged her signature and nothing more, and therefore the case last referred to cannot apply, as earnestly contended by appellant.

It is contended that on February 28, 1873, the bond was in fact re-executed and that a redelivery of it then took place. If so redelivered with alterations, and if she at the time had no knowledge of them she cannot be held liable. The learned trial judge instructed the jury : " If you shall find from an inspection of the bond that these alterations were made, then the question arises, were they made with the knowledge and assent of Mrs. Turner, the defendant? If not made in that way, she would be relieved of her liability on this bond as a surety for her brother." He thus left this to them as a question of fact to be determined by them. As the interlineations and erasures were questions of fact for the jury, Heffelfinger v. Shutz, 16 S. & R. 44, they have found by their verdict that they were made without her knowledge or assent, and, if they were so made, clearly she cannot be held to be liable upon this bond : Miller v. Gilleland, 19 Pa. 123. When the principal party modifies his contract, it is fatal to its validity as against the surety whose assent has not been obtained, even if it be for his benefit, or if it do him no harm : Bensinger v. Wren, 100 Pa. 505.

It has been argued that the bond in question was executed with the alterations and erasures, and delivered as such to the bank, and therefore the appellee is liable, but the evidence does not warrant this conclusion. The only witness upon this subject is Mr. Lance, who testified : That he dropped in the bank on February 28, 1873 ; that appellee was in the bank behind the counter ; that the cashier was also there ; that the appellee did not sign it then, but that she acknowledged her signature ; that the cashier handed him the bond; that he was requested to make the date of his witnessing it. There is no evidence therefore to show that the appellee knew that the date of the bond had been changed, or that any of the alterations had been made. She thus acknowledged her signature only, and the witness put his name to the paper with the date. If that bond, executed in 1871 during coverture and therefore void, was intended by her to be executed, she being discovert, and redelivered to the bank, this evidence does not establish it. The

learned judge charged the jury: "If you find that it has not been altered, in the manner alleged, if it was really signed not in 1871, but on 28th of February, 1873, you will then determine her liability." As the question of re-execution and redelivery was thus submitted to the jury, their verdict negatives this contention.

The evidence does not warrant the conclusion that although she signed the bond in 1871 she in fact executed it February 28th, 1873, with a knowledge of the alteration, nor that the obligors retained this bond from 1871 and delivered it to the bank in 1873, with its date rewritten February 28, 1873. The alternative contention that, even if this bond was actually delivered to the bank in 1871, it was redelivered in 1873, the date being changed with her consent and knowledge, is not sustained by the evidence.

It is scarcely necessary to discuss the admission claimed to have been made by counsel for appellee. Its effect would necessarily have been fatal to her defence. It is therefore not possible that with this effect it could have been intended to be made. It would be a harsh rule to hold that the rights of parties may be swept away by admissions of counsel unintentionally made. The learned judge was right therefore in treating the admission as unintentional, and the jury in regarding it in the same light.

Judgment affirmed.