461 A.2d 1324

**SILCO VENDING COMPANY, Appellant**

v.

**Charles QUINN and Mary Quinn, individually and trading as Quinn's Tavern.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1982.

Filed June 24, 1983.

368

Howard Wallner, Philadelphia, for appellant.

William L. Zeitz, Philadelphia, for appellees.

Before JOHNSON, WATKINS and LIPEZ, JJ.

LIPEZ, Judge:

Silco Vending Company (Silco), plaintiff in this action in assumpsit, appeals from the lower court's order finding

against Silco and in favor of defendants Charles and Mary Quinn, against whom suit had been brought as individuals and as the partnership trading as Quinn's Tavern. Silco argues that the lower court's decision, premised upon a finding that Mary Quinn had not been a partner with her deceased husband in the operation of the business, must be reversed because defendants admitted in pleadings and during trial that Mrs. Quinn was a partner in the operation of Quinn's Tavern. We agree and vacate the order of the lower court.

The contract sued on was headed, "Exclusive Contract—Consideration For Term", and was executed on July 18, 1974. It recites that the agreement was made between Silco and Charles and Mary Quinn doing business under the name of Quinn's Tavern, and provides that in consideration of $500.00 cash and a commission on cigarettes sold at the location the Quinns would give Silco the exclusive right to sell cigarettes at Quinn's Tavern for a five-year period. It also provides that if the business were to be sold before expiration of the contract's term, the Quinns would notify Silco of the impending sale at least two weeks before settlement and would include in the agreement of sale a provision requiring the purchaser to assume the obligations of the contract with Silco. The final clauses of the contract set out a formula for determining the amount of liquidated damages to be awarded to Silco upon breach of the contract.

In July, 1975, after the death of Charles Quinn, Mary Quinn sold the business without notifying Silco or requiring the purchaser to assume the contract. Silco then brought this action, alleging that the sale constituted a breach of the agreement and seeking damages calculated according to the formula contained in the contract. In her answer, Mary Quinn denied any liability under the contract, alleging that she had not signed it,[1] and raised several affirmative de-

---

**1.** Although the contract bore a signature appearing to be that of Mary Quinn, as well as that of Charles Quinn and Silco's president Harvey

fenses to its enforcement. Her answer also stated, "It is averred that Mary Quinn was formerly a partner with her late husband, Charles Quinn, in a business known as Quinn's Tavern. Said partnership was dissolved by the death of Charles Quinn." Answer to Complaint in Assumpsit, para. 2. Statements that Mrs. Quinn had been a partner in the tavern were also made in response to plaintiff's interrogatories and by defendant's counsel during the course of the trial.

The lower court found that Mary Quinn had not signed the contract, and that finding is not challenged in this appeal. It also found, however, that Mary Quinn had never been her husband's partner in operating the tavern, and therefore rejected Silco's contention that Mrs. Quinn might be bound by the contract under the provisions of the Uniform Partnership Act, 59 P.S. § 1 *et seq.*, specifically 59 P.S. § 31.[2] Silco's sole contention in this appeal is that, in light of Mrs. Quinn's admissions of partnership, this finding was erroneous. We agree.

■■■■ "Admissions ... contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who made them." *Tops Apparel Manufacturing Co. v. Rothman*, 430 Pa. 583, 587, 244 A.2d 436, 438 (1968). Although conclusions of law contained in pleadings are not treated as admissions of facts in issue, *Srednick v. Sylak*, 343 Pa. 486, 492–93, 23 A.2d 333, 337 (1942), it is well established that in

Siller, Mrs. Quinn denied that the signature on the document was hers.

2. Act of March 26, 1915, P.L. 18, part III, § 9, *repealed*, Act of December 19, 1975, P.L. 524, No. 155, § 2 *and replaced*, Act of December 19, 1975, P.L. 524, No. 155, § 1 (59 Pa.C.S. § 321). The section reads, in pertinent part:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Pennsylvania the existence of a partnership and the identities of its members are considered questions of fact, and admissions of such facts are binding upon the party making them. *See, e.g., Rowland v. Canuso,* 329 Pa. 72, 196 A. 823 (1938); *Gay v. Waltman,* 89 Pa. 453 (1879). It is thus clear that, having admitted to partnership in pleadings, defendant could not have denied that she was a partner and demanded proof of partnership at trial.[3]

■ Defendant argues, however, that while she might have been bound by her admission of partnership, those admissions were not binding on the court. She cites *L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.,* 253 F. 914 (7th Cir.1918) as authority for her contention that the lower court was within its discretion in avoiding the effect of the admissions in this case. The language of the *Larson* opinion, however, indicates that this was not a proper case for the exercise of such discretion:

> Undoubtedly a litigant has no cause for complaint if the court accepts his solemn and sworn admissions in pleadings and testimony as true. But we reject the contention that his adversary has the right to compel the court to do so. Otherwise a court could be forced by parties to decide moot, feigned, and collusive cases .... But the present case ... is not moot, feigned or collusive ....
>
> .     .     .     .     .
>
> ... In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an *absolute demonstration* from other evidence in the case or from facts within judicial notice, like the laws of

**3.** Defendant also contends, relying on *Nesbitt v. Turner,* 155 Pa. 429, 26 A. 750 (1893), that an admission made through counsel's inadvertence may be overlooked by the court. We need not address the merits of that claim or the continued vitality of *Nesbitt,* however, because it is clear on the record in this case that defendant's averments of partnership, even if ill-advised, were intentionally made. Admissions of partnership were made repeatedly in pleadings, in her pre-trial brief, and at trial. Moreover, in answers to plaintiff's interrogatories, she admitted not only to partnership status, but also to co-ownership of the business premises, active participation in business operations, and entitlement to 50% of the business profits.

physics, etc., that *under no circumstances could the averments and admissions be true.*

*Id.* at 917–18 [emphasis added]. Here, the facts that Mrs. Quinn was co-owner of the tavern as a tenant by the entireties and was co-holder of the license issued by the Pennsylvania Liquor Control Board for operation of the taproom provide a basis for at least the possibility that her averment of partnership in the business was true. To ignore her admissions under these circumstances was thus an abuse of discretion.

Accordingly, we hold that Mary Quinn should be bound by her admission of partnership and that the lower court should consider the merits of both Silco's contention that she is liable for breach of a partnership contract and defendant's affirmative defenses to enforcement of the contract.[4]

Order vacated; case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

**4.** Defendant argues that we should hold the liquidated damages clause void as a penalty and, since plaintiff proved no actual damages, affirm the order in defendant's favor. The lower court, however, made no findings of fact as to losses suffered by Silco, and we are thus unable to assess the reasonableness of the damages clause on the facts of this case. We therefore remand resolution of this claim, as well as defendant's other affirmative defenses, to the lower court.