**C&C/MANHATTAN, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS and**
**HEERY INTERNATIONAL, INC., Appellees,**
**HYDE PARK/PERINI, Intervenor**
**C&C/MANHATTAN v. GOVERNMENT OF V.I.**
D.C. Civ. App. No. 2001/028

District Court of the Virgin Islands

Division of St. Croix

November 29, 2004

378

*For Appellant C&C/Manhattan*: LEE J. ROHN, ESQ., K. GLENDA CAMERON, ESQ., Law Offices of Lee J. Rohn, St. Croix, U.S.V.I.

*For Appellee Government*: MICHAEL LAW, ESQ., Department of Justice,

*For Appellee Heery International*: MATTHEW J. DUENSING, ESQ., GARRY E. GARTEN, ESQ., Jones, Stryker, Duensing, Casner & Dollison, St. Thomas, U.S.V.I.

*For Intervenor Hyde Park/Perini*: W. JOHN AMERLING, ESQ., Sanford, Amerling & Associates, St. Thomas, U.S.V.I.

FINCH, *Chief Judge District Court of the Virgin Islands*; MOORE, *Judge of the District Court of Virgin Islands*; and THOMAS, *Judge of the Territorial Court, Sitting by Designation*

## MEMORANDUM OPINION

(November 29, 2004)

This appeal asks us to decide whether the trial court erred in determining the appellant joint venture ["appellant," "C&C/Manhattan"] lacked standing as a disappointed bidder so challenge the letting of the government construction contract, where its composition differed from that of the joint venture that submitted the bid on the prison project. Also presented for determination here are: whether the court erred in excluding evidence of an amended joint venture agreement, and whether the trial court erred in denying the appellant's motion to amend its complaint to add a new plaintiff and a taxpayer claim to save the action.

For the reasons which follow, we affirm the trial court's determinations in every respect.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

### The Government House Joint Venture

In August 1997, four companies—C&C Construction and Maintenance, Inc. ["C&C"], Manhattan Construction (Bahamas) Ltd. ["Manhattan/Bahamas"], General Technical Services, Ltd. ["General"], and Manhattan Construction Co. of Oklahoma ["Manhattan/Oklahoma"] [collectively, the "Government House joint venture"]—were named in a written joint venture agreement. That agreement was executed by representatives of only three parties, however: C&C, Manhattan/Bahamas, and General. (Joint Appendix ["J.A."] as 327-33). Also appearing in the record is another agreement surrounding the Government House joint venture, which was executed on the same day and by the same signatories above, but which did not include Manhattan/Oklahoma as a member in its introductory paragraph. (*Id.* at 337). Both versions of the Government House joint venture agreement specifically limited the scope of the joint venture relationship to the construction of Government House and specified that the formation of that relationship was "not for any other purpose." (J.A. at 327, 337). That agreement also made clear that individual joint venturers could continue to do business independent of the joint venture. (*Id.*). The parties designated as their trade name, "C&C Manhattan/A Joint Venture". (*Id.* at 327, ¶ 5).

### The Prison Joint Venture

In August 1998, a two-party joint venture consisting of C&C and Manhattan/Bahamas [collectively, "the prison joint venture"] collaborated to respond to a Request for Qualification ["RFQ"] to have an opportunity to bid on a project to expand the Golden Grove Adult Correctional Facility on St. Croix ["the prison project"]. (*See* Request for Qualifications, Supplemental App. of Hyde Park/Perini ["S.A. Hyde Park"] et 51). The prison joint venturers also purported in the RFQ to be doing business under the trade name, "C&C Manhattan/A Joint Venture." After receiving the requisite pre-qualification, the two-party joint venture was permitted to respond to a Request for Proposals ["RFP"]. In responses to that RFP, the joint venture consistently identified itself as a two-party entity consisting of C&C and Manhattan/Bahamas. (*See e.g.,* J.A. at 1317-1320). The

prison construction project was ultimately awarded to Hyde/Park Perini, although C&C/Manhattan was the lowest bidder.

## The Amended Joint Venture Agreement

Appellant originally took the position in the trial court that there was no written agreement for the prison joint venture and that the joint venturers for the Government House project, with the exception of General, had merely *orally* agreed to extend the first joint venture agreement for the purpose of pursuing the prison project. (Br. of Appellant at G). However, appellant later produced a written amendment to the Government House joint venture agreement. (J.A. at 433-34). That amendment removed General from the venture and purported to extend the Government House joint venture to the prison project with the following joint venturers: Manhattan/Bahamas, Manhattan/Oklahoma, and C&C. (*Id.*). Although that document was dated May 11, 1998, appellant submitted it just two days before the July 15, 1999 hearing on the motion to dismiss. The court denied admission of that document as untimely.

## The Injunction

After failing in its efforts to get the prison contract, one of the joint ventures filed an action for injunction relief and damages in Territorial Court. At the time of that filing, that joint venture's composition was not clearly established. The court, after hearings on the issue, granted a preliminary injunction, conditioned upon the posting of a $1.5 million bond. [J.A. at 222-52]. That bond was never posted, and the injunction therefore never issued. In the interim, interlocutory appeals were filed in this Court, challenging first the Territorial Court's grant of the injunction in favor of the appellant and then that court's failure to vacate its order after appellant failed to post the required bond. (Reply Br. at Supp. Add. 3-15). Those appeals were denied as moot. (*Id.*)

## Motions to Dismiss and to Amend

Hyde Park filed a motion to dismiss the complaint, in which the other parties joined, arguing the appellant was really a different joint venture from that which bid on the prison project and, therefore, could not be a disappointed bidder. Consistent with the representations in the RFQ and RFP, appellant asserted in its opposition to the motion to dismiss that the

381

joint venture for the prison project was a two-party entity consisting of only Manhattan/Bahamas and C&C. (J.A. at 349). In addition, appellant moved to amend its complaint to add, *inter alia*, C&C in its capacity as an individual taxpayer and a taxpayer action pursuant to V.I. CODE ANN. tit. 5 § 80. The court permitted discovery, held multiple hearings on the standing issue over a period of several months, and permitted briefs on the issue.

During the course of these events, appellant represented that the joint venture for the prison project was created by oral agreement. However, a copy of a written agreement amending the joint venture agreement to include the prison project later surfaced. After it became clear the asserted joint venture had not complied with statutory registration requirements, appellant subsequently filed the necessary paperwork in an attempt to cure the deficiencies and served those copies on the court to avoid the obstacles presented by 11 V.I.C. §§ 1203, 1212 (preventing companies deficient in certificate of trade filing requirements from maintaining an action in this jurisdiction). However, those filings reflected certification of a three-party joint venture consisting of C&C, Manhattan/Bahamas and Manhattan/Oklahoma. (J.A. at 643-45).

Following that submission, the trial court granted the appellees' motion to dismiss, reasoning the joint venture named in the complaint and later certified as a three-party entity was not the same entity that bid on the prison project and, therefore, was not an injured party with standing to challenge that bid award. (J.A. at 261-65). The court also denied appellant's motion to amend the complaint, citing undue delay and specific prejudice to the opposing parties. (*Id.*). Alternatively, the court held that, without standing to sustain its own action, appellant also had no standing to amend the complaint in an attempt to revive the action for a more proper plaintiff. This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Our jurisdiction to review this timely appeal is properly founded on 4 V.I.C. § 33 and Section 23A of the Revised Organic Act of 1954.[1] We

---

[1] The Revised Organic Act of 1954 is found at 48 U.S.C. § 1613a (1994), *reprinted in* V.I. CODE ANN., Organic Acts 73-177 [codified as amended] (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

afford plenary review to questions of law. *See Julien v. Virgin Islands,* 961 F. Supp. 852, 854 (D.V.I. App. Div. 1997). However, we review the trial court's factual findings under the clearly erroneous standard. *See* 4 V.I.C. § 33; *see also Stallworth Timber Co. v. Triad Bldg. Supply,* 968 F. Supp. 279, 280, 37 V.I. 49 (App. Div. 1997).

## B. Lack of Standing

### 1. Disappointed Bidder Standing

■ C&C/Manhattan challenges the trial court's determination that it lacked standing as a disappointed bidder, based on factual questions surrounding its identity and composition. The trial court found that the differing members of the C&C/Manhattan joint venture named in that action, as compared to that named in the prison joint venture, resulted in an altogether different entity which precluded a finding that the appellant was the disappointed bidder entitled to claim injury as a result of the alleged contracting violations. This issue presents mixed questions of law and fact. Whether a party lacks standing as a disappointed bidder is a question of law, to which we afford plenary review. *See Julien v. Virgin Islands,* 961 F. Supp. 852, 854 (D.V.I. App. Div. 1997). However, whether a joint venture existed and the terms of its existence present questions of fact reviewable only for clear error. *See e.g., Silco Vending Company v. Quinn,* 315 Pa. Super. 367, 461 A.2d 1324, 1326 (1983).

■ To properly obtain access to the courts, there must be an actual case or controversy. *See e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); *Sierra Club v. Morton,* 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972). This case or controversy requirement instructs that a party must establish he has standing to assert a claim by demonstrating: (1) an "injury in fact, economic or otherwise"; and (2) that he is within the zone of interests intended to be protected by applicable law. See *Association of Data Proc. Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152-53, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970); *compare Lujan,* 504 U.S. at 560; *Julian,* 961 F. Supp. at 855-56. Though this constitutional requirement is stated as one for Article III courts and is not otherwise specified in our statutes, our courts have adopted the federal standing requirement as a matter of prudential consideration. *See e.g., Donastorg v. Government of V.I. ex rel. Dep'ts and Agencies and its Com'rs and Directors* LX 21653354, *4-6 (Terr. Ct. 2003) [noting judicially imposed standing

requirement as a condition of judicial review in the Territorial Court] (citing *Environmental Assoc. of St. Thomas and St. John v. Department of Planning and Natural Res.*, 44 V.I. 218 (Terr. Ct. 2002)).

■ As the trial court correctly noted, an unsuccessful bidder for a governmental contract is an aggrieved party with standing to challenge the government's contracting procedures under the standards noted above. *See Merriam v. Kunzig*, 476 F.2d 1233, 1240 (3d Cir.), *cert. denied*, 414 U.S. 911, 38 L. Ed. 2d 149, 94 S. Ct. 233 (1973) ("The public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a private attorney general.") (adopting and quoting *Scanwell Laboratories, Inc. v Shaffer*, 137 U.S. App. D.C. 371, 424 F.2d 859, 864 (C.A.D.C. 1970)) (internal quotation marks omitted). Thus, the relevant issue here is only whether the appellant in this instance may be deemed a disappointed (or unsuccessful) bidder for the prison project, such that it is entitled to challenge the contracting procedures. The trial court held the appellant was not such a disappointed bidder, because of its factual determination that the appellant was not the same joint venture that had bid unsuccessfully on the prison project. This issue requires that we look briefly at the joint venture form.

■ A joint venture is a business relationship created by agreement of the parties for the purpose of profit. *See Guerrero v. Bluebeard's Castle Hotel Inc.*, 982 F. Supp. 343, 349, 37 V.I. 344 (1997) (citing WALTER H.E. JAEGER, 2 WILLISTON ON CONTRACTS § 318A at 570 (3d. ed. 1959). Unless otherwise determined by agreement, a joint venture is generally formed for a single undertaking or transaction. *See Hellenic Lines, Ltd. v. Commodities Bagging & Shipping Process Supply Co.*, 611 F. Supp. 665, 679 (D.N.J. 1985); *see also United States v. USX Corp.*, 68 F.3d 811, 825-26 (3d Cir. 1995). Because of the limited purposes for which joint ventures are formed, such relationships terminate at the conclusion or their stated purpose, by agreement, or at the will of the parties. *See Hellenic Lines*, 611 F. Supp. at 679; *Abel v. American Art Analog, Inc.*, 838 F.2d 691, 695-97 (3d Cir. 1988). In determining whether a joint venture has been formed, consideration is given to: the existence of an agreement, whether express or implied; the parties' contribution of money, property, effort, knowledge, skill or other asset to

a common undertaking; the parties' joint property interest in the subject matter of the venture; right of mutual control or management of the enterprise; and an agreement to share in the profits and losses of the venture. *Hellenic Lines*, 611 F. Supp. at 679. However, where, as here, there exists a written agreement governing the parties' relationship, the scope of their relationship and the terms of the joint venture must be determined from the plain and unambiguous terms of that agreement. *See e.g.*, 6 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 2522 (2003); 46 AM. JUR. *Joint Vent* § 61 (where agreement specifies duration of the joint venture, that term is controlling).

Here, the only writing surrounding the nature of a C&C/Manhattan joint venture was the Government House agreement signed in August 1997, which defined a three-party or four-party entity.[2] That agreement expressly limited the scope of that relationship to the Government House project and specified that the joint venture existed for no other than its stated purpose. Further evidence that its members were united for that single transaction was the agreement's provision recognizing each member's ability to continue to transact business independent of the joint venture. The effect of that clause was that individual joint venturers—or any combination thereof—could later collaborate on other projects separate from that agreement without binding its other members. Coupled with that was evidence that the joint venture that submitted a bid on the prison project a year later was defined as a two-party joint venture consisting of only C&C and Manhattan/Bahamas. A trade certification later issued by the Virgin Islands government authorized a three-party entity consisting of C&C, Manhattan/Bahamas and Manhattan/Oklahoma to conduct business under the C&C/Manhattan joint venture.

As an appellate court, we are bound by the factual findings of the trial court, unless those findings are shown to be clearly erroneous. *See* 4 V.I.C. § 33, *Coastal General Const. Services, Inc. v. Virgin Islands Housing Auth.*, 238 F. Supp. 2d 707, 709 (D.V.I. App. Div. 2002). Such clear error is shown where the trial court's determination is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary

---

[2] As earlier noted, there were two different versions of that agreement on the record, and each reflected differing members of the joint venture.

data," or if after "giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are left with a definite and firm conviction that a mistake has been committed," *Coastal General*, 238 F. Supp. 2d at 709 (*citing Handleman v. Walsh (In re Murphy)*, 171 F. Supp. 2d 499, 505 (D.V.I. 2001) (citation omitted), *Virgin Islands v. Albert*, 89 F. Supp. 2d 658, 663 (D.V.I. 2000)), *see also Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 397 (D.V.I. App. Div. 2003). Given the differing members of each of the joint ventures and the express limiting language of the only written agreement defining the parties' relationship, as well as all the evidence appearing on record, we find no clear error in the trial court's determination that the party appearing before it was not the same entity that had bid unsuccessfully on the prison project and, therefore, had no standing to obtain judicial review of the same.

## 2. Exclusion of Amendment

At hearings on the standing issue below, appellant initially preffered only the Government House joint venture agreement and relied on an apparent oral agreement to extend the joint venture's purpose to include the prison construction bid. On the eve of the court's July 15, 1999 hearing on the standing issue, however, appellant then produced a copy of a document purporting to amend the Government House joint venture agreement. That amended agreement included as joint venturers C&C, Manhattan/Oklahoma, and Manhattan/Bahamas. After hearing arguments on the issue, the trial court granted appellees' motion to exclude evidence of that purported amendment. The court held the document was untimely. Appellant now claims error in the exclusion of that evidence, which it claims would have aided in resolving the issue of its standing to proceed as a disappointed bidder.

The trial court's determinations regarding the admission of evidence are reviewed for abuse of discretion, to the extent those decisions are not predicated on its interpretation of the federal rules or legal precepts. *See Guardian Ins. Co. v. Joseph*, 31 V.I. 145 (App. Div. 1994) (citing *In re Merritt Logan, Inc.*, 901 F.2d 349 (3d Cir. 1990)). To establish an abuse of discretion in the exclusion of evidence, it must be shown that the court's action was "arbitrary, fanciful or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (citation omitted).

■ Pertinent here is the fact that the appellant produced this document after multiple hearings on the issue, scheduling orders by the court to move the hearing process along, months of discovery, and failed attempts by the appellees to have any written agreements relevant to the joint venture produced in discovery. Also apparently significant is the fact that the appellant initially persisted in its claim that the Government House joint venture had been only orally extended to include the prison project. Both appellant's representative and its counsel persisted in their representations to the court that they were relying on an oral agreement and had no written agreement regarding the prison venture. Significantly, the court—as noted in its April 2000 order—had put this case on a fast-track to trial in light of the important public interests involved. In this context, a delay of seven months was not insignificant, as appellant suggests. Moreover, the purported amendment to expand the Government House agreement to "prison projects" and "jails" in general and reflecting a three-party entity was also of questionable significance, because the joint venture defined in that amendment did not comport with the two-party entity defined in the RFQ and the RFP submitted for the prison project. Under these facts, the court did not abuse its discretion in denying admission of the evidence.

### 3. Motion to Amend to Claim Taxpayer Standing.

Apparently realizing the fate of its claim as a disappointed bidder, C&C/Manhattan then petitioned the court to amend its complaint to join a third party as an aggrieved taxpayer and add a new taxpayer claim, pursuant to 5 V.I.C. § 80.[3] The trial court rejected these attempts to save the action by amending the complaint, holding such an amendment would have been unduly burdensome and, indeed, prejudicial to the opposing party at that juncture in the proceedings. Additionally, the court concluded it was improper to permit the appellant to amend the complaint to save an action which it had no standing to prosecute in the first instance.

---

[3]  Notwithstanding the trial court's denial of C&C/Manhattan's attempt to amend its complaint, the appellant attempts to argue that, even if it had no standing as a disappointed bidder, it was a taxpayer and could have proceeded order 5 V.I.C. § 80. That statute does not require a showing of a particularized injury. *See Smith v. Government of V.I.*, 329 F.2d 131, 134, 4 V.I. 489 (3d Cir. 1964). Because C&C/Manhattan did not initially plead, nor was it allowed to amend its complaint to assert, a taxpayer cause of action, we cannot consider those arguments here. (*See* Appellant's Br. at 19-24).

387

Once an answer is filed, a party is permitted to amend its pleading only by leave of court, which "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Whether to grant such leave to amend lies within the discretion of the trial court, after consideration of the potential for unfair prejudice to the adverse party, and its decision in that regard are reviewed for abuse of that discretion. *See Foman v. Davis*, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); *Krantz v. Prudential Investments Fund Management, LLC*, 305 F.3d 140, 144 (3d Cir. 2002). Common considerations which may justify denial of a motion to amend are "undue delay, bad faith or dilatory motive on the part of the movant," and "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman*, 371 U.S. at 182. Although delay, standing alone, does not necessarily require denial of a motion to amend, such denial may be warranted where the delay has prejudicial effect on the adverse party's ability to defend, particularly where the case has significantly progressed and where the appellant was aware of the facts supporting his claim and is unexcused in failing to plead them. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971); *see also Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990).

■ As noted above, while this case was relatively young, it had significantly progressed as a result of the trial court's determination that it was in the public's interest to proceed to a quick resolution. As such, schedules for discovery were issued with an eye toward resolving preliminary disputes, including the standing issue. Some discovery had been done and multiple hearings held. Moreover, the facts and legal basis supporting the motion to amend were known to the appellant from the inception of the case. More significantly, however, the opposing parties had spent many months in hearings and through motion practice refining the issues in the case based on the theories presented. The trial court found that permitting an amendment at that juncture would have effectively required restarting of the entire process. On these facts, we can find no abuse of discretion in its denial of appellant's motion to amend.[4]

---

[4] Having determined the trial court did not abuse its discretion in denying the motion to amend on this basis, we need not address the court's alternative basis for that denial.

## C. Amount of Injunction Bond

Appellant challenges the $1.5 million bond set by the court at the preliminary injunction stage. The appellees, however, argue the mootness doctrine applies here to bar review of that bond amount. This Court agrees.

Included in justiciability considerations is the mootness doctrine, which removes from the court's consideration cases or issues for which it is no longer able to effectively grant relief. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996*), Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992). This case or controversy requirement extends throughout all stages of judicial proceedings, including appellate review. Therefore, if an issue becomes moot, the appellate court may not reach its merits, except under very limited circumstances not present here. *See Clark*, 979 F.2d at 967, *see also, Khodara Envt'l., Inc. v. Beckman*, 237 F.3d 186, 192-93 (3d Cir. 2001).

[10] Where a court contemplates a preliminary injunction, Federal Rule of Civil Procedure 65 requires that a bond first be set in an amount the court, in its discretion, determines appropriate to protect the opposing party in the event an improvidently granted injunction results in losses. FED. R. CIV. P. 65; *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100 (3d Cir. 1988). Appellant never posted the bond in this instance, and the preliminary injunction never issued. Were we now to decide that the court abused its discretion and that a new bond amount should be set, such a decision would be meaningless. Significantly, the prison project which the appellant sought to enjoin has long been completed. Thus, there is nothing to enjoin. *Compare Clark*, 979 F.2d at 967-68 (purpose of injunction no longer present, where parties effectively resolved dispute); *Seafarers Internat. Union v. National Marine Servs.*, 820 F.2d 148, 151-152 (5th Cir. 1987) (completion of sale sought to be enjoined mooted injunction issue); *Campesinos Unidos, Inc. v. United States Dep't of Labor*, 803 F.2d 1063 (9th Cir. 1986) (dispute over contracting methods to rival bidder on government contracts mooted by completed performance of the contracts, since no relief could be given and the dispute was not capable of repetition yet evading review). As the challenge here surrounds the court's imposition of a bond amount which it seemed necessary under the unique facts of the case at the time, the narrowly drawn exception for reviewing moot claims is inapplicable here. *See Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001)

(noting exception applies in circumstances where: (1) the action was in its duration too short to be fully litigated to its cessation or expiration and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again). Any challenge to the amount of the injunction bond is, therefore, now moot.

## IV. CONCLUSION

Under the facts stated above, we find no clear error in the trial court's determination that the joint venture appearing before it was not the same entity that bid unsuccessfully on the prison project and, therefore, had no standing to challenge the prison contract. We also hold that, on the facts presented here, the trial court did not abuse its discretion in denying admission of a written agreement amending the written joint venture agreement which was belatedly submitted for consideration, or in denying a motion to amend the complaint to add a new claim and a more proper plaintiff. Finally, we hold that challenges surrounding the amount of the injunction bond set by the court are not moot. Therefore, for the reasons earlier stated, we affirm the trial court's order dismissing the complaint.