**BLUEBEARD'S CASTLE, INC., Plaintiff**
**v.**
**DELMAR MARKETING, INC., Defendant**

Civil No. 1993-125

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 31,1995

SAMUEL HALL, JR., ESQ., (BIRCH, DE JONGH, HINDELS & HALL), St. Thomas, V.I., *for plaintiff*

CHARLES ENGEMAN, ESQ., (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, V.I.,
 *for defendant*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on plaintiff's motion to reconsider its Order of February 7, 1995 which disqualified the plaintiff's counsel, the firm of Birch, deJongh, Hindels, & Hall, from further representation of the plaintiff in the course of this litigation. Since plaintiff's arguments merely rehash those proffered in its opposition to defendant's original motion to disqualify, the Court will deny the plaintiff's motion to reconsider. *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310 (S.D.Tex. 1994) ("neither Rule 59 nor a Rule 60 motion provides the proper vehicle for rehashing old arguments"). However, because plaintiff appears still to misapprehend why its counsel's actions merit sanctions, and because of the importance of this issue to the bar in general, the Court reiterates and expands upon some of the rationales for its original decision.

■ Assuming that this District Court Judge is bound by the decision of another co-equal District Judge, plaintiff argues that the Court's disqualification Order does not comport with the principles of law set out in *Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp 193 (D.V.I. 1990) (Brotman, J.)[1] Not only is *Brice* factually inapposite, but that case merely applies the same "substantial relationship" analysis used in this case. The Court in *Brice* did note, however, that a balancing test has been employed, after and in addition to the substantial relationship analysis, in determining the appropriateness of the disqualification of an attorney in cases where relevant countervailing considerations exist. One party's request for disqualification is balanced against the opposing litigant's interest in retaining its chosen counsel who has familiarity with the factual and legal issues involved and its interest in

---

[1] "The district court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193, 195 (citing U.S. v. Miller, 624 F.2d 1198, 1201 (3d. Cir. 1980).

279

avoiding the time and expense required to familiarize a new attorney with the matter. *Id.* at 195.

■■ In the case at bar, the Court expressly balanced these two factors against disqualification and found them insufficient to outweigh Mr. Macauley's interest in the continued loyalty of counsel and other prophylactic justifications for enforcing the applicable disciplinary rule.[2] Although we did not explicitly state that we had balanced the third factor mentioned in Brice, namely, "the policy that attorneys be free to practice without excessive restrictions," the Court's lengthy discussion of counsel's duties to avoid conflicts at the outset of any consultation makes it clear that this factor was also considered and found insufficient. A requirement that attorneys warn clients of any and all conflicting loyalties cannot be said to hamper or excessively restrict the practice of law. In fact, such a duty lies at the core of professional responsibility.

■ In short, our Order in this case is completely consistent with the law as set out in Brice. In that case, the judge concluded that the attorney in question could not have acquired "any substantive confidences or secrets of [its former client] *relating to this action.*" Brice at 197 (emphasis added). By contrast, we have determined here that it was indeed possible, if not likely, that relevant, detrimental confidences had been revealed during the 1991 consultation. The Court in Brice essentially found that no substantial relationship existed between the attorney's prior representation of the opposing party in similar, but unrelated actions, and the case then before the Court. Here, we found that a substantial relationship does in fact exist. Moreover, we have determined that the precedents which presume that confidential information has been passed between client and counsel during prior representation more perfectly reflect the dictates of Model Rule 1.9.

Claiming that Farrelly could not have perceived a conflict when Macauley, allegedly, could not identify the person with whom he scuffled, the plaintiff misses the point of the Court's analysis. The

---

[2] Farrelly states that he considered the 1991 consultation an investigation into an "altercation that might adversely impact Bluebeard's Castle Hotel if [Mr. Macauley] was a Bluebeard's employee or agent . . . acting within the course and scope of his employment." (Farrelly 10/31/94 Aff. P 3).

Order does not concern any conflict based upon Attorney Farrelly's friendship with Al Perkins. The disqualification Order addresses a conflict, which began with the potential divergence of interests between Mr. Macauley and Bluebeard's when Macauley sought Farrelly's advice in 1991 and culminated in Farrelly's representation of Bluebeard's in the present lawsuit against Macauley and Delmar. The affidavit and deposition testimony of Mr. Macauley, Mr. Cavanaugh (the plaintiff's manager), and Mr. Jones (a former employee of the plaintiff) incontrovertibly establishes that Cavanaugh arranged a meeting between Farrelly and Macauley for the sole purpose of deciding whether Macauley should initiate a personal injury lawsuit against a person whom he claimed had assaulted him. (See, Decl. of J.D. Jones, Def.'s Br., Ex. B, P 4; Dep. of J. Cavanaugh, p 3; Decl. of S. Macauley, Def.'s Br., Ex. A, P 10).

Although Attorney Farrelly may have thought at the outset of the 1991 consultation that it involved Macauley's work for Bluebeard's,[3] counsel soon learned that the altercation took place at night in a nightclub restaurant. Mr. Farrelly then concluded from this that "the altercation had nothing to do with my client, Bluebeard's Castle." (Farrelly 10/31/94 Aff. P 5). While the altercation itself may have had nothing to do with Bluebeard's, Macauley's intent to sue over it did involve the plaintiff. Mr. Farrelly's failure to appreciate the limitation his responsibilities to Bluebeard's imposed upon his ability to give unbiased legal advice to Macauley laid the groundwork for the conflict of interest addressed by our Order.[4] Mr. Farrelly is charged with having known that his loyalty to Bluebeard's would likely cause him to try

[3] See, Model Rule 1.7(b) which reads, in part:
 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, . . . unless:
 (1) the lawyer reasonably believes the representation will not be adversely affected; and
 (2) the client consents after consultation.
Rule 1.4(b) reads:
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] For instance, Mr. Farrelly might have explained that his advice would be influenced by Bluebeard's preference to avoid publicity over a lawsuit involving a manager of its timeshare sales program who participated in a brawl at a nightclub.

to dissuade Macauley from taking any action that might adversely affect Bluebeard's. Before undertaking to give any advice, Attorney Farrelly was required to obtain Mr. Macauley's consent after explaining how his representation of Bluebeard's might affect the advice he would give Macauley.[5] The Court has determined that, since Farrelly did, in fact, give legal to Macauley during the 1991 consultation, he assumed the role of Macauley's counsellor.[6] The circumstances of the 1991 consultation required an express admonition and explanation of the nature of Farrelly's pre-existing, conflicting loyalty to Bluebeard's.

Three other aspects of the plaintiff's motion papers require comment. First, plaintiff's observation that "Mr. Perkins is a personal friend of Attorney Farrelly's"[7] undermines the credibility of its continued claim that including the scuffle with Mr. Perkins as evidence in this case of the breach of the parties' contract was the result of "mistake" in preparing its interrogatory responses. It is highly unlikely that an attorney would "inadvertently" entangle a personal friend in litigation between two wholly unrelated parties. Moreover, defendant attached to its original opposition papers the affidavit of Mr. Ryan "Robb" Robinson, who plaintiff now claims should have been named in its interrogatory responses, in which Mr. Robinson denies that any assault or altercation has ever occurred between himself and Macauley. (Robinson Aff. P 20). Finally, whether defendant knew that Mr. Perkins was not the proper party referenced in the complaint, as plaintiff contends, is completely irrelevant to the disqualification analysis.

Second, plaintiff's counsel would have the Court draw a firm conclusion from his want of recollection: "The fact that I do not recollect the necessity to warn Mr. Macauley is indicative to me

---

[5] Attorney Farrelly concedes that Macauley's claim that Farrelly advised Macauley not to file suit "is certainly consistent" with Farrelly's recollection of their consultation. (Farrelly 10/31/94 Aff. P 8).

[6] Farrelly 10/31/94 Aff. P 11.

[7] Mr. Farrelly has previously conceded that he took no notes and has little, if any, recollection of the 1991 consultation with Mr. Macauley. (Farrelly 10/31/94 Aff. P 8). The contradictory inferences which the affiant seeks to draw from his lack of memory further support the Court's earlier conclusion regarding the credibility of the parties' respective accounts of the 1991 consultation.

282

that the need to do so never arose." (Farrelly 2/24/95 Aff. P 3).[8] In and of itself, Attorney Farrelly's failure to recollect a need to inform Macauley of his loyalties is simply not probative that no such need arose.[9]

Third, there is no basis for plaintiff's contention that information relevant to the present litigation could not have come up during the 1991 consultation. Of necessary concern to a prospective litigant are any areas of potential embarrassment or vulnerability, particularly where, as in the case of a physical altercation at a nightclub, one bringing suit may expect to be met with counterclaims for battery and damages. It is more logical than not that Macauley would have touched on one or more of the following topics: his personal background, his legal status in the United States, his payment of taxes, and the organization of his business, including its assets, liabilities, and licensing status. The difficulty of assessing exactly what subjects may or may not have been broached only confirms the advisability of the prophylactic application of the Model Rules.

 In closing, the Court reiterates that an attorney must give a prospective client a clear description of any possible limitations which might adversely affect his ability to represent that client whenever those limitations are or should be known. In this case, counsel was required to explain to Mr. Macauley that he could not even discuss the advisability of a suit over the altercation unless Mr. Macauley understood that Farrelly's primary loyalty lay with Bluebeard's and until Macauley consented to such representation.[10]

██ Attorney Farrelly's failure to adequately address his conflicting loyalties in 1991 lies on the periphery of the issue in this case, and should not be confused with the Court's essential rationale for disqualification, namely, the adverse use of information gleaned during the 1991 representation in the present lawsuit. Since Mr.

---

[8] Similarly, counsel's assertion that the consultation with Macauley "was a brief, casual contact in which minimal information was exchanged" is also based solely upon Mr. Farrelly's foggy memory. (Pl's Mot. for Recon. at 1).

[9] See, Model Rule 1.7(b).

[10] See, Model Rule 1.7(b).

Farrelly did not explain the potential conflict to Mr. Macauley in 1991, but instead offered him legal advice, an attorney client relationship arose between them. Counsel's use of the very subject matter of the 1991 consultation, and perhaps other information disclosed during that consultation, on behalf of an adverse party in a subsequent lawsuit is not condoned by the Model Rules of Professional Conduct.

A motion for reconsideration serves to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171, 90 L. Ed. 2d 982, 106 S. Ct. 2895 (1986). Plaintiff has neither demonstrated any errors of law nor presented any newly discovered evidence. Accordingly, plaintiff's motion will be denied. An order to that effect is attached.

ENTERED this 31st day of March, 1995

### ORDER

For the reasons set forth in the attached Memorandum, it is hereby

ORDERED that the plaintiff's motion for reconsideration is DENIED.

ENTERED this 31st day of March, 1995