**DAMARIS GUERRERO, Plaintiff**

**v.**

**BLUEBEARD'S CASTLE HOTEL, INC., et al., Defendants**

Civ. No. 1994-73

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 29, 1997

A. JEFFREY WEISS, ESQ., (A.J. Weiss & Associates), St. Thomas, U.S.V.I., *for Plaintiff*

John Cavanaugh, Esq., William Sullivan, Esq., James Graves, Esq., and Mary Faith Carpenter, Esq., (Dudley, Clark & Chan), St. Thomas, U.S.V.I., *for Defendant Bluebeard's Castle Hotel, Inc.*

Lloyd De Vos, Esq., (De Vos & Co.), St. Thomas, U.S.V.I., *for Individual Timeshare Owners Defendants*

MOORE, *Chief Judge*

## MEMORANDUM

This matter came on for a hearing on Friday, March 7, 1997, on several outstanding motions, including: 1) plaintiff's motion to disqualify counsel for the individual timeshare owners ["timeshare defendants"], 2) motions to dismiss for lack of subject matter jurisdiction filed separately by the timeshare defendants and the other defendants, namely, Bluebeard's Castle Hotel Inc., John Cavanaugh, William Sullivan, James Graves, and Bluebeard's Castle Hilltop Villas Condominium Association ["Hotel defendants"] and 3) the timeshare defendants' motion to dismiss for failure to state a claim which was converted into a motion for summary judgment by order dated February 20, 1996 (Docket No. 289). For the following reasons, plaintiff's motion to disqualify counsel for timeshare defendants is denied. The defendants' motions to dismiss for lack of subject matter jurisdiction are denied. Finally, the timeshare defendants' motion for summary judgment is granted and they are dismissed from the case.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Damaris Guerrero, a flight attendant, stayed overnight at Bluebeard's Castle Hotel, Inc. ["Bluebeard's"] in August of 1993 through arrangements made by her employer, American Eagle. While leaving her room at Bluebeard's, plaintiff was attacked by an unknown assailant who attempted to rape her. Plaintiff filed suit against Bluebeard's on June 10, 1994, alleging that Bluebeard's was negligent for assigning plaintiff a room far from the front desk at the extreme end of the property, and for failure to have adequate security measures in place to protect its guests. (Complaint, ¶¶ 5-14, 18-19.)

Subsequent discovery revealed that the unit where the assault occurred was actually a timeshare condominium managed by an entity called the Bluebeard's Hilltop Villas Condominium Association ["the Association"]. Plaintiff sought to amend her complaint and on August 10, 1995, the Magistrate Judge allowed plaintiff to file a second amended complaint[1] adding 93 additional parties. The additional parties included the individual partners of the partnership that owned Bluebeard's Castle Hotel, Inc., the Association, and all of the individual timeshare owners of the unit involved. Bluebeard's objected to the filing of the second amended complaint primarily on the ground that the statute of limitations had run for asserting a claim against the new parties. After the second amended complaint was filed, Bluebeard's unsuccessfully moved the Magistrate Judge to reconsider the order granting leave to file. Bluebeard's also filed objections to the Magistrate Judge's August 10, 1995, order to the District Court. Before this Court could rule on the objections to the order, the timeshare defendants filed a motion to dismiss for failure to state a claim pursuant to RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiff's theory of liability for the individual timeshare owners is premised on the allegation that the individual timeshare defendants "entered into a joint venture with each other and the owners and managers of Bluebeard's for purposes of using their timeshare unit for random rental to non-timeshare unit owners for purposes of generating profit to the owners from rental of said unit." (First Amended Complaint, August 11, 1995, at ¶ 10.) Plaintiff asserts that as joint venturers the individual timeshare defendants are jointly and severally liable with Bluebeard's. After a hearing, the Court issued an order on February 20, 1996, converting the timeshare defendants' motion to dismiss into a motion for summary judgment and permitting additional limited discovery for plaintiff to prove the existence of a joint venture.

On April 22, 1996, the Warziniacks, the owners of the timeshare interval for the unit for the date on which the assault occurred, responded to the plaintiff's discovery requests. The Warziniacks

---

[1] The complaint filed on August 14, 1995, (Docket No. 100) is mistakenly captioned "First Amended Complaint." A first amended complaint was previously filed on June 13, 1994 (Docket No. 2), a mere three days after the original complaint was filed.

responded to plaintiff's first request for production of documents that they had no documents "concerning operation of the Hotel, or [their] participation in any Hotel plan, venture, or arrangement which permits the use of [their] unit/interest by the Hotel" nor any documents "referencing, relating to, concerning or evidencing [their] participation or the contribution of [their] unit or ownership interest, to Bluebeard's for use by the Hotel or the accommodation of overnight guests . . . ." The Warziniacks' objected to most of the requests which sought such items as any and all correspondence between the Warziniacks and Bluebeard's, income tax returns, and insurance information on the ground that the requests did not bear upon the issue of the existence of a joint venture agreement or hotel plan as specified in the February 20, 1996, order. In May of 1997, plaintiff filed a motion to compel, which was denied on the ground that the discovery requested was beyond the scope allowed in the February 20, 1996, order.

Sometime after the February 20, 1996, order was issued, the defendants filed new motions to dismiss for lack of subject matter jurisdiction pursuant to RULE 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE. Plaintiff's complaint premised jurisdiction on 28 U.S.C. § 1332 because the parties were of diverse citizenship. In their motions to dismiss, defendants assert that because certain members of the Association are from Puerto Rico, there is not complete diversity of citizenship between the parties since plaintiff is also a citizen of Puerto Rico. Plaintiff subsequently filed a "Notice of Voluntary Dismissal" dismissing the Association as a party defendant, citing RULE 41(a)(1)(I) of the FEDERAL RULES OF CIVIL PROCEDURE. Defendants objected to the voluntary dismissal on the grounds that the Association is an indispensable party and accordingly the entire case has to be dismissed for lack of jurisdiction. This memorandum resolves all outstanding motions.

## DISCUSSION

### A. Motion to Disqualify Timeshare Counsel

Motions to disqualify present unique and difficult problems. The plaintiff seeks to disqualify counsel for the timeshare defendants ["timeshare counsel"] based on a telephone conversation between

plaintiff's counsel and timeshare counsel at a time before the individual timeshare owners were defendants in this case. During the call, timeshare counsel sought a contract to assist plaintiff's counsel with plaintiff's case.[2] Plaintiff argues that timeshare counsel is now prohibited from representing any parties adverse to the plaintiff in this case because plaintiff entered into an attorney-client relationship with timeshare counsel during this conversation.

■ Whether disqualification of timeshare counsel is necessary turns on whether an attorney-client relationship between plaintiff and timeshare counsel ever came into existence. In deciding whether an attorney should be disqualified, the interest of a party in retaining its chosen counsel is balanced against the interest protected by the applicable disciplinary rules. *Bluebeard's Castle, Inc. v. Delmar Marketing, Inc.*, 32 V.I. 278, 279-80 (D.C.V.I. 1995)(on Motion to Reconsider)(*citing Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193 (D.C.V.I. 1990)). The disciplinary rules governing attorneys who appear before this Court are the AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT ["MODEL RULES"]. *See* L.R.Ci. 83.2(a)(1). The interests in this case protected by these rules are preserving the confidentiality of matters imparted by a client to her lawyer in confidence, and, to a lesser degree, guaranteeing the continuing loyalty an attorney owes a former client. *See* MODEL RULES 1.6 and 1.9.[3]

■ An attorney-client relationship is an agency relationship and "arises only when the parties have given their consent, either express or implied, to its formation." *Committee on Professional Ethics & Grievances v. Johnson*, 447 F.2d 169, 174 (3d Cir. 1971). An express relationship exists when the parties have entered into a formal written or oral contract. An implied attorney-client relationship can arise from a "'preliminary consultation by a prospective

---

[2] The attorney who now represents the timeshare defendants had successfully sued the Bluebeard's Castle Hotel on behalf of a plaintiff who had been assaulted at the hotel.

[3] RULE 1.6 of the MODEL RULES provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation . . . ." Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation . . . ."

client with a view to retention of a lawyer, although actual employment does not result.'" *Polyagro Plastics v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D. Puerto Rico 1995) (*quoting Westinghouse Elec. Corp. v. Kerr-McGee*, 580 F.2d 1311, 1319 (7th Cir. 1978)). An implied attorney-client relationship arises, however, only if confidential information *is in fact* transmitted from the prospective client to the lawyer, and if the prospective client divulged such confidences with the reasonable belief that the lawyer was acting as the party's attorney. 903 F. Supp. at 257; *see also First Hawaiian Bank v. Russell & Volkening, Inc.*, 961 F. Supp. 233, 239 (S.D.N.Y. 1994).

■ In the circumstances of the case now before the Court, there is insufficient indication that an attorney-client relationship ever existed, and none will be presumed. The pleadings demonstrate that timeshare counsel sought out the opportunity to aid plaintiff's counsel. No evidence has been forthcoming in camera or otherwise that confidential information was imparted by plaintiff's counsel to timeshare counsel. Rather, the "prospective client" received a sales pitch. Finally, the participants to this conversation were both sophisticated counsel well-trained in the law. Instead of an un-trained layperson approaching a member of the bar for help in time of need, we have two law firms discussing various fee arrangements. Accordingly, no attorney-client relationship existed between timeshare counsel and plaintiff.

The facts of the case at bar are distinguishable from those of *Bluebeard's Castle, Inc. v. Delmar Marketing, Inc.*, in which this Court ruled that it is presumed that confidential information passes between attorneys and clients. 32 V.I.205, 208, 886 F. Supp. 1204, 1207 (D.C.V.I. 1995). Plaintiff urges the Court to apply *Delmar's* presumption that confidential information necessarily passed to determine whether an implied relationship existed. The Court declines to do engage in such obviously circular reasoning. More-over, the facts of *Delmar* strongly indicated that an attorney-client relationship in fact existed. The prospective client there was specifically seeking representation by the attorney. The prospective client was a layperson, unskilled in the law. The attorney involved gave sufficient advice to allow the prospective client to make his own decision not to pursue the case.

350

■ Since no attorney-client relationship existed between time-share counsel and plaintiff, timeshare counsel owes no continuing duty of loyalty to plaintiff, and there is no basis for presuming that confidential information passed between plaintiff's counsel and timeshare counsel. In a motion to disqualify, the moving party has the burden of proof in showing that confidences were shared. *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)(party seeking disqualification bears burden of showing impermissible actions). This, the movant has failed to do.

## B. Rule 12(b)(1) Motions To Dismiss

■ The timeshare defendants and the Hotel defendants separately filed motions to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Both motions rely on the fact that an association is not a separate legal entity for purposes of citizenship but rather is a citizen of every state or territory in which any of its members is a citizen. *See, e.g., Carden v. Arkoma Associates*, 494 U.S. 185, 195, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990). Because some members of the Association are citizens of Puerto Rico, the Association is also a citizen of Puerto Rico, and diversity jurisdiction is therefore destroyed.

After the 12(b)(1) motions were filed, the plaintiff filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(I) of the Federal Rules of Civil Procedure dismissing the Association as a party defendant. Plaintiff then responded to the motions to dismiss by arguing that the voluntary dismissal mooted the motions. The defendants replied that because plaintiff had represented in its pleadings that the Association was an indispensable party, the plaintiff could not now simply dismiss the Association for procedural reasons to save this Court's jurisdiction. Defendants also argue that voluntary dismissal under Rule 41(a)(1)(I) was not available to the plaintiff because she did not seek to dismiss the entire action but only one party. According to the defendants, the only proper procedure for the plaintiff would have been to ask the court to dismiss the Association pursuant to Rule 21 of the Federal Rules of Civil Procedure.

Rule 41(a)(1)(I) provides in relevant part that "an action may be dismissed by the plaintiff without order of court (I) by filing a

351

notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . ." RULE 21 provides that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

■ RULE 41 can be used by a plaintiff to dismiss an action against one party while continuing the lawsuit against other parties. Defendants cite to no authority for their assertion that "action" means the entire lawsuit against all parties. Defendants' interpretation would preclude the use of RULE 41 to voluntarily dismiss fewer than all of the defendants. That is clearly not the law. Because the Association at the time of the notice of dismissal had not filed an answer or a motion for summary judgment, the dismissal was proper.[4] Accordingly, because all of the remaining parties are of diverse citizenship, this Court continues to have proper jurisdiction under 28 U.S.C. § 1332, and will deny the 12(b)(1) motions to dismiss.

## C. Timeshare Defendants Motion for Summary Judgment

As noted above the timeshare defendants filed a motion to dismiss for failure to state a claim under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, which was converted into a motion for summary judgment by order dated February 20, 1996. In their motion, the timeshare defendants first argue that the plaintiff's claim is barred by the statute of limitations. Even if not time barred, the timeshare defendants argue that they cannot be liable simply based upon their status as timeshare owners. The plaintiff asserts that the statute of limitations does not bar her claim and that her joint venture theory of liability is viable and that by-laws and timeshare condominium law cited by the defendants are inapplicable.

■ The event giving rise to plaintiff's claim occurred on August 8, 1993. The applicable statute of limitations for her claim is two

---

[4] The other defendants have not attempted to force dismissal of the entire action by moving to join the Association under RULE 19 of the FEDERAL RULES OF CIVIL PROCEDURE as an indispensable party. In general, however, joint tortfeasors are not considered indispensable parties who must be joined in a lawsuit. CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 7 FEDERAL PRACTICE AND PROCEDURE § 1685 (2d Ed. 1986).

years. V.I. CODE ANN., tit. 5, § 31. Plaintiff filed her original complaint on June 10, 1994. She filed her motion for leave of court to file an amended complaint adding the timeshare defendants on August 3, 1995, five days before the end of the statutory period. The motion was not granted until August 10, 1995, and the amended complaint was not actually filed until August 14, 1995. Because the plaintiff filed her motion to amend within the statutory period, the fact that the amendment was not granted until after the expiration of that period does not bar her claim. *See, e.g., Longo v. Pennsylvania Electric Co.,* 618 F. Supp. 87, 89 (W.D.Pa. 1985) (timely filing of motion to amend to add new party defendant, rather than final court approval, was sufficient to commence civil action by filing of complaint with court); *Gloster v. Pa.R.Co.,* 214. F. Supp. 207 (W.D.Pa. 1963) (where motion to amend to add additional party defendant was filed within the time allowed for wrongful death action, court not barred from granting motion after statute of limitations expired).

The timeshare defendants' other arguments for dismissal are based on property law relating to time share ownership, the Association's bylaws, and tort law principles for when a duty of care is owed. The plaintiff responds that these arguments do not address plaintiff's joint venture theory. Plaintiff argues that the timeshare defendants are liable as joint venturers for the negligent acts and omissions of other joint venturers, rather than because of any act of negligence of any of the timeshare defendants. As the plaintiff explains, "[u]nder this theory of liability the imputation of negligence is based upon the status of the Timeshare Defendants as joint venturers, *not* their status as 'interval estate owners.'" (Mem. Law on Behalf of Pl. Opp. to Timeshare Defendants' RULE 12(b)(6) Mot. to Dismiss, at 5.) The timeshare defendants respond that plaintiff has failed to plead any facts which would support her joint venture theory. This Court converted the motion into one for summary judgment and permitted the plaintiff to conduct limited discovery on the issue of the existence of a joint venture.

Although its definition and nature are not precise, a joint venture is distinguishable from other business associations by the fact that it is always undertaken for profit. *See* WALTER H. E. JAEGER, 2 WILLISTON ON CONTRACTS § 318A at 570 (3d. Ed. 1959) ("The

expectation of making a profit is an indispensable element of a joint venture.") Simple joint ownership is not a joint venture if the aim is not to make a profit. *Id.* at 571.[5] As the record demonstrates, all plaintiff has been able to prove is that the timeshare defendants have some sort of joint ownership interest in the premises where the incident allegedly occurred. Plaintiff has not presented any proof of the indispensable aim or expectation among the part of the timeshare defendants of making a profit.

■ Plaintiff's assertion that the timeshare defendants and Bluebeard's Castle were participating in a joint venture with respect to the use and rental of the condominium units fails for several reasons. First and foremost, plaintiff cannot point to any agreement, express or implied, that the timeshare defendants and Bluebeard's intended to participate in a joint venture. The Warziniacks assert that they have no documents "concerning operation of the Hotel, or [their] participation in any Hotel plan, venture, or arrangement which permits the use of [their] unit/

---

[5] One court has summarized the factors which determine whether a business relationship constitutes a joint venture:

> The elements of a joint venture are virtually identical to those required for a partnership. The only difference is that the character of the joint venture relationship may be more informal and is usually limited to a single undertaking or transaction, although the conduct of that enterprise may continue for a number of years. The *sine qua non* of a joint venture is a contract, express or implied; that is, an actual agreement between the parties. This agreement need not assume a particular form, or be formally executed, but may be implied wholly or in part from the acts and conduct of the parties. In addition to the requirement of an actual agreement, the following elements must also be present:

> (A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;

> (B) A joint property interest in the subject matter of the venture;

> (C) A right of mutual control or management of the enterprise;

> (D) An agreement to share in the profits or losses of the venture.

> Although a joint venture is not present absent a right of mutual control, mutual control over every aspect of the venture need not be actual. "A joint adventurer may entrust actual control of the operation to his co-adventurer and it still remains a joint venture." Similarly, joint venturers may agree that responsibility for particular tasks shall reside with less than all the venturers.

*Hellenic Lines, Ltd. v. Commodities Bagging & Shipping Process Supply,* Co. 611 F. Supp. 665, 679 (D.N.J. 1985)(internal citations omitted); *see also United States v. USX Corp,* 68 F.3d 811, 825-26 (3d Cir. 1995).

interest by the Hotel" nor any documents "referencing, relating to, concerning or evidencing [their] participation or the contribution of [their] unit or ownership interest, to Bluebeard's for use by the Hotel for the accommodation of overnight guests . . . ." The only evidence that such a plan might exist is the fact that Bluebeard's did use the Warziniacks' unit for a Bluebeard's hotel guest, namely, the plaintiff. (Aff. John Cavanaugh, 11/28/95.) Plaintiff has produced no evidence that this assignment of a timeshare unit to a guest was part of a joint plan or arrangement between Bluebeard's and the timeshare defendants or the Association.

Plaintiff's joint venture theory also fails because even if there was an agreement regarding the use of timeshare units by the hotel, she has produced no evidence that the timeshare defendants or the Association on behalf of the timeshare defendants derived any profit from such an arrangement or that the purpose of such an arrangement was to make a profit. On the contrary, the evidence supports the inference that any relationship was for the mutual convenience of the Association and Bluebeard's. The declaration submitted under Virgin Islands law by Bluebeard's to establish the timeshare condominiums makes the Association responsible "to find and secure, at its own expense, alternate accommodations for any Condominium Interval Unit Owner who is not able to occupy his or her Condominium Villa Unit . . . due to failure to vacate any holdover owner" or if the unit is unusable; the alternate accommodations could be at Bluebeard's Hotel. (Declaration, at 12, 25.) The declaration does not appear to differentiate between units that are used as condominiums and units that are used as hotel rooms. The inference can be drawn, therefore, that Bluebeards allows the Association to use hotel rooms for timeshare unit owners when a particular unit is unavailable, in return for which the Association lets Bluebeard's utilize unoccupied timeshare units as hotel rooms if needed. Plaintiff has put forth no evidence to rebut these reasonable inferences or to establish that any relationship was for profit purposes.

 Plaintiff's sole theory for imposing liability on the timeshare defendants is their alleged status as joint venturers of Bluebeard's. Plaintiff has failed to produce any evidence of such a joint venture even after being allowed to conduct limited discovery

on the issue. Because no evidence has been proffered that the timeshare defendants participated jointly in any for-profit venture with Bluebeard's, leaving no genuine dispute of material fact on this issue before the Court, summary judgment in favor of the timeshare defendants is appropriate. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

## CONCLUSION

For the foregoing reasons, plaintiff's motion to disqualify counsel for timeshare defendants is denied. The defendants' motions to dismiss for lack of subject matter jurisdiction are denied. Finally, the timeshare defendants' motion for summary judgment is granted and they are dismissed from the case.

ENTERED this 29th day of October, 1997.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that plaintiff's motion to disqualify Attorney De Vos is DENIED; and

ORDERED that defendants' motions to dismiss for lack of subject matter jurisdiction are DENIED; and

ORDERED that timeshare defendants' motion for summary judgment is GRANTED and they are DISMISSED from the case.

ENTERED this 29th day of October, 1997.