**PANTHEON ENTERPRISES, INC., Plaintiff**

**v.**

**HOTEL ON THE CAY TIMESHARING ASSOCIATION, INC., et al., Defendants**

Civil No. 553/1998

Territorial Court of the Virgin Islands

Div. of St. Croix

August 20, 1999

STACY L. WHITE, ESQ., St. Croix, U.S.V.I., *for Plaintiff*

ELLEN G. DONOVAN, ESQ., St. Croix, U.S.V.I., *for Defendant Association*

DONOVAN M. HAMM, JR. ESQ., St. Croix, U.S.V.I., *for Individual Defendants*

RICHARD HUNTER, ESQ., (Hunter, Colianni, Cole & Turner), St. Croix, U.S.V.I., *for Individual Defendants*

JEFFREY MOORHEAD, ESQ., St. Croix, U.S.V.I., *for Individual Defendants*

TODD H. NEWMAN, ESQ., (Nichols, Newman, Silverlight, Logan & D'Eramo), St. Croix, U.S.V.I., *for Individual Defendants*

ESZART A. WYNTER, ESQ., (Law Offices of Eszart A. Wynter, Sr., P.C.), St. Croix, U.S.V.I., *for Individual Defendants*

Benedetto Cerilli, Esq., Providence, Rhode Island

Jim Espoito, Esq., New York, New York

Arthur H. Fink, Jr., Esq., Milwaukee, Wisconsin

Milton Strangler, Esq., Providence, Rhode Island

Joe L. Thorpe, Esq., Allentown, Pennsylvania

CABRET, *Judge*

## MEMORANDUM OPINION

Pantheon Enterprises, Inc. ("Pantheon") sued Hotel on the Cay Timesharing Association, Inc. ("Association"), the owners of vacation timeshare units at Hotel on the Cay and several other entities in an attempt to satisfy a foreclosure deficiency by judicial sale of the defendants' timeshare interests. The matter is before the Court on Motions to Dismiss for failure to state a claim filed by various defendants. For reasons which follow, Defendants' motions are granted.

## I. MOTION TO DISMISS STANDARD

Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). When deciding a 12(b)(6) motion to dismiss, a court must read the complaint in a light most favorable to the plaintiff, and all factual allegations in the complaint must be taken as true. *Gov't Guar. Fund of the Republic of Finland v. Hyatt Corp.*, 35 V.I. 356, 363, 955 F. Supp. 441 (D.V.I. 1997). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Id.* And, although a court's review of a 12(b)(6) motion is generally restricted to the allegations in the complaint, courts may consider undisputed documents and matters of public record relied upon by the plaintiff even if such documents are not attached to the plaintiff's complaint. *Id.*

## II. THE FACTS

Pantheon's complaint in this case concerns a vacation timeshare community on Protestant Quay, a small island located in St. Croix's

Christiansted Harbor. The complaint reveals that Protestant Quay is owned by the Government of the Virgin Islands. In 1964, the Government conveyed a long-term lease of Protestant Quay and its improvements to Hotel on the Cay, Inc. ("Hotel on the Cay Leasehold").[1] The Hotel on the Cay Leasehold was eventually assigned to an individual named Oliver Plunkett. On August 4, 1980, Plunkett submitted his Hotel on the Cay Leasehold interests to a timeshare scheme by filing in the land records a document titled "Declaration of Partial Leasehold Ownership Plan Establishing the Hotel on the Cay A Time-Sharing Vacation Ownership Plan" ("Declaration").

Pantheon relies on the Declaration to establish its rights in this case, and several of its provisions are relevant to the instant motions. Specifically, the Declaration refers to Plunkett as the "'Declarant,'" and in the recitals provides that "the Declarant desires to submit a portion of his leasehold estate in [Protestant Quay] and his ownership interest in some, but not all, of the leasehold improvements on such land, to a horizontal property regime[.]"[2] The horizontal property regime established by the Declaration consists of time-share estates. According to the Declaration, a time-share estate is a partial leasehold interest in a particular apartment unit for a specified period of time each year.[3] The Declaration further provides that "[e]ach owner of a time-share estate in an apartment unit shall also own an undivided leasehold interest in the common elements and the apartment unit's respective interest in the limited common elements as an appurtenance to the ownership of each such time-share estate in

---

[1] According to the recitals of the timeshare declaration, cited *infra*, the lease will expire in the year 2013.

[2] The Declaration states that there are a total of 56 apartment units contained in two buildings and contains exhibits detailing the layout of each building and the floor plans of the apartment units. *Id.* at paragraph 2.A; Declaration Exhibits 1-15. In addition, the Declaration states the value of the entire property and that the value of each apartment unit is equal to the proportionate amount square-footage of each apartment and the appurtenant share of the common and limited common elements.

[3] The Declaration states that there are a total of 56 apartment units contained in two buildings and contains exhibits detailing the layout of each building and the floor plans of the apartment units. *Id.* at paragraph 2.A; Declaration Exhibits 1-15. In addition, the Declaration states the value of the entire property and that the value of each apartment unit is equal to the proportionate amount square-footage of each apartment and the appurtenant share of the common and limited common elements.

the time-sharing vacation ownership plan."[4] The periods of time-share ownership, called "unit-weeks" have a minimum duration of seven days. There are a total of 2,912 unit-weeks created by the Declaration. Most of the individual defendants in this case are stateside[5] residents who purchased a time-share estate which entitles them to occupancy of one or more unit-weeks.

Under the Declaration, the operation of the time-share ownership plan is the responsibility of the Hotel on the Cay Time-Sharing Association, Inc. ("Association").[6] The Association membership consists of all the owners of time-share estates.[7] In its operation and management of the community, the Association has the responsibility and authority to approve annual budgets and levy and collect annual and special assessments from the owners for the common expenses of the time-share property.

In addition to these typical time-share declaration provisions, the Declaration in this case contains a paragraph 21 titled "UNDERLYING MORTGAGES."[8] Paragraph 21 lies at the heart of this litigation and in its entirety provides:

> The Declarant hereby gives notices that there is an existing mortgage on the premises recorded at P.C. page 151, Document number 2893/1979, in the Office of the Recorder of Deeds, Christiansted, St. Croix, U.S. Virgin Islands, in favor of First Bank, N.A. Milwaukee, Wisconsin, in the face amount of $1,735,000.00. All sales of partial leasehold units are subject to this existing mortgage,

---

[4] *Id.* at paragraph 2.E. Paragraph 3 of the Declaration describes the apartment unit boundaries and the common elements and limited common elements appurtenant to each unit.

[5] The term "stateside" is a popular Virgin Islands colloquialism referring to the continental United States.

[6] The Declaration describes the Association as a non-profit corporation, existing under the laws of the Virgin Islands, with its principal office located at Protestant Cay, Christiansted, St. Croix.

[7] Membership, voting rights, including the allocation of votes, and the Declaration amendment procedure are explained in paragraphs five and 15 of the Declaration. In addition, the paragraphs 10.C and 16 explain that, in the event the community is damaged or destroyed, "[a]ll of the owners of unit-weeks may remove the time-sharing vacation ownership plan property from the provisions of [the] declaration[.]" *Id.* at paragraph 16.

[8] *Id.* at paragraph 21.

though the Declarant expressly acknowledges that the payment of this mortgage is exclusively the responsibility of the Declarant, and to that extent the Declarant hereby agrees to indemnify and hold harmless all owners of partial leasehold estates from any claims or liabilities incurred as the result of said mortgage. Further, the Declarant expressly reserves the right to further encumber the entire property in the future and all owners of partial leasehold estates take their interest subject to the Declarant's right to further encumber the property so that all owners of partial leasehold estates expressly agree in advance to subordinate their interests to such future encumbrances incurred by the Declarant. This paragraph is to be strictly construed and applied only to mortgages voluntarily incurred by the Declarant and to no other debts or liabilities which may be imposed against the Declarant.[9]

After Plunkett recorded the Declaration, he apparently sold numerous time-share estates in Hotel on the Cay. Plunkett ultimately declared bankruptcy, however, and on October 16, 1986 the bankruptcy trustee conveyed Plunkett's Hotel on the Cay Leasehold to Harborfront Properties, Inc. ("Harborfront"). On December 28, 1990, Harborfront executed a mortgage in favor of lender Fairway Capital Corporation ("Fairway"), securing the repayment of a $1,700,000 note with its Hotel on the Cay Leasehold ("the mortgage"). According to the complaint, the mortgage was recorded on January 9, 1991.

The Hotel on the Cay Leasehold and the mortgage were both subsequently assigned to other parties. Harborfront conveyed the Hotel on the Cay Leasehold, subject to the mortgage, to Legend Resorts, L.P. ("Legend"). The plaintiff in this case, Pantheon, was ultimately assigned the mortgage. In 1994, Pantheon foreclosed the mortgage, and the timeshare interests owned by Legend were sold at foreclosure sale on May 2, 1997. In its complaint in this case, Pantheon alleges that the Order Confirming Sale left a deficiency of

---

[9] *Id.*

$589,462. Pantheon further alleges that "pursuant to the subordination of timeshare interests provided for by the Declaration and paragraph 20 of the Harborfront mortgage to Fairway, [Pantheon] now seeks to recover this deficiency by sale of individually named Defendants' timeshare interests as more fully set forth herein."[10] In its prayer for relief, Pantheon requested, *inter alia*, that the mortgage

> be recognized as superior to the Declaration and the interests created thereunder; [and] that the leasehold timeshare units, and personal property of Defendants be sold free and clear of any of the liens of the Defendants and that all the Defendants be barred from any rights or claims against the Leasehold or under the Declaration; [and] that upon sale, the purchaser may join with the owner of the Hotel on the Cay timeshare units previously sold at Marshal's sale . . . and terminate the timeshare program, with said Declaration to be canceled and of no further force and effect[.][11]

Numerous individual time-share estate owners have been served with the complaint and filed answers, pro se. In most of these answers, the time-share owners express bewilderment that Pantheon is attempting to foreclose on their interests. The owners state that they have fully paid for their time-share interests and all Association assessments, and thus do not understand the basis for Pantheon's foreclosure action.

### III. DISCUSSION

The defendants raise several potent arguments in support of their motion to dismiss. For instance, they argue that Harborfront never acquired the right to encumber the Association's interests or those of the individual time-share estate owners. In this regard, the defendants argue that while paragraph 21 of the Declaration purportedly gave the declarant the right to further encumber the time-share estates purchased by the defendants, the Declaration

---

[10] Complaint at paragraph 22.

[11] *Id.* at prayer for relief.

defines the "Declarant" as Oliver Plunkett, not Harborfront. And, although Harborfront acquired Plunkett's Hotel on the Cay Leasehold from the bankruptcy trustee, the Association contends that this acquisition did not result in Harborfront becoming a successor declarant. In support of this contention, the Association points out that the Declaration was never amended to name Harborfront as the declarant and according to its terms, paragraph 21 is to be "strictly construed and applied only to mortgages voluntarily incurred by the Declarant[.]"[12] All the motions echo similar arguments, namely that Harborfront never had the authority to encumber the defendants' time-share estates, and even if it had such authority, the mortgage does not purport to encumber these interests.

■ ■ The Court need not reach these arguments, however, because it agrees with the defendants' other contention that paragraph 21 of the Declaration violates Virgin Islands law. Specifically, title 28, section 913 of the Virgin Islands Code, titled "Blanket mortgages and other blanket liens affecting an apartment at time of first conveyance," provides:

> At the time of the first conveyance or lease of each apartment, every mortgage and other lien affecting such apartment, including the percentage of undivided interest of the apartment in the common areas and facilities, shall be paid and satisfied of record, or; the apartment being conveyed or leased and its percentage of undivided interest in the common areas and facilities shall be released therefrom by partial release duly recorded.

V.I. Code Ann. Tit. 28, § 913 (1996). Similarly, title 28, section 908 (a) provides that "[s]ubsequent to recording the declaration as provided in this chapter, and while the property remains subject to this chapter, no lien shall thereafter arise or be effective against the property." Title 28, § 908 (a). This latter provision is based on the Model Condominium Act and is fashioned to prevent a developer "from encumbering the interests of others by giving a lien against the whole property once the [declaration] is filed." *Resolution Trust*

---

[12] Declaration at paragraph 21.

110

*Corp. v. Eagle Lake and Golf Condominiums*, 427 S.E.2d 646, 648 (S.C. 1993). A mortgage violating the statute is void. *Id.* at 647. Inasmuch as the mortgage in this case, recorded on January 9, 1991, arose after the August 4, 1980 recording of the Declaration, it is clearly violative of section 908 and therefore void. Similarly, section 913 clearly prohibits blanket mortgages encumbering the individual apartment units. Thus, to the extent that Harborfront, or its successors, failed to satisfy the mortgage when they sold time-share estates in the apartment units, these entities violated section 913 and any resulting liens on the units are void. *See id.*

Pantheon argues that these provisions are inapplicable in the instant case because they are part of the Virgin Islands Condominium Act ("Condominium Act") and the Declaration did not create a condominium that is subject the restrictions. The Court disagrees.

"The term 'condominium,' which is used to describe a system of ownership as well as an individually owned unit in a multi-unit development, is Latin in origin and means joint dominion or co-ownership." *Nahrstedt v. Lakeside Village Condominium Ass'n*, 878 P.2d 1275, 1280 (Cal. 1994). This is a hybrid form of ownership under which a unit owner owns not only his or her individual unit but also an undivided share in the community's common areas and facilities. *See id.; Noble v. Murphy*, 612 N.E.2d 266, 269 (Mass.App.Ct. 1993). Indeed, the Condominium Act defines "condominium" as "real property within given bounds with separate ownership of individual units thereon and with all the unit owners owning, as tenants in common, an interest in the common areas." V.I. Code Ann. tit 28, § 901 (I) (1996).

A condominium is similar to, but should not be confused with other forms of common interests ownership. For example, a "cooperative" is "a common interest community in which the real estate is owned by an association, each of whose members is entitled by virtue his ownership interest in the association to exclusive possession of a unit." 8 Richard R. Powell, *Powell on Real Property*, app. 54-14 (1998) (quoting Uniform Common Interest Ownership Act, § 1-103 (10)). Either of these forms of ownership may be used in a timeshare community, *see, e.g., Guerrero v. Bluebeard's Castle Hotel, Inc.* 37 V.I. 344, 982 F. Supp. 343 (D.V.I. 1997), and each has advantages and disadvantages. *See Powell,*

111

*supra* at Chap. 54F, ¶ 633.65 [4]-[6]. Interestingly, in his treatise on real property, Professor Powell remarks that one of the advantages of a timeshare cooperative is that the "developer may be able to convey the property subject to a favorable existing mortgage, assuming the existing mortgage does not contain a due-on-sales clause. Condominium units, on the other hand, must be delivered to purchasers free and clear of all liens and encumbrances." *Id.* at ¶ 633.65[6].

The condominium scheme is also described as horizontal property ownership. This is because the "area above land can be divided into a series of strata or planes capable of severed ownership, making the ownership of things affixed to land separable from the ownership of the land itself." *Nahrstedt*, 878 P.2d at 1280. The Condominium Act uses the horizontal property ownership description in its requirements for submission to the Act. Specifically, the Condominium Act provides:

> [w]henever the sole owner or sole lessee or all of the owners or all of the lessees of a property expressly declare, through the execution and recordation of a master deed or lease, together with a declaration, which declaration shall set forth the particulars enumerated by section 910 of this title, his or their desire to submit the property to the regime established by this chapter, there shall thereby be established a horizontal property regime with respect to the property, and this chapter shall be applicable to the property. In the event that the master deed or lease is already recorded, the recordation of the declaration shall be deemed sufficient to achieve the same result.

V.I. Code Ann. tit. 28, § 902 (1996).

In the instant case, the Declaration reveals that the declarant intended to establish a horizontal property regime in which individuals would own timeshare condominiums. As stated above, in the recitals to the Declaration, the declarant complied with section 902 by *expressly* declaring his "desire[] to submit a portion of his leasehold estate in [Protestant Quay] and his ownership interest in some, but not all, of the leasehold improvements on

112

such land, to a horizontal property regime[.]"[13] (Emphasis supplied). Under the horizontal property regime expressly created by the declarant, a timeshare owner owns a "partial leasehold interest in a particular apartment unit with the exclusive right of use, possession and occupancy of the apartment unit" and in addition owns "an undivided leasehold interest in the common elements and the apartment unit's respective interest in the limited common elements."[14] There is no discernable difference between this ownership scheme and that defined as a "condominium" in the Condominium Act. *See* tit. 28, § 901 (I). Each regime contemplates separate ownership of individual units which includes an undivided share in the community's common areas and facilities. Finally, as required by section 902, the Declaration and its exhibits comply with the requirements of section 910.[15] By executing and recording this Declaration, the declarant submitted the timeshare condominium project to the provisions of the Condominium Act. *See Maas v. Cabrite Point Condominium Ass'n*, 27 V.I. 115, 117 (Terr. Ct. 1992); *Dunes South Homeowners Assn, Inc. v. First Flight Builders, Inc.*, 459 S.E.2d 477, 479 (N.C. 1995).

Having determined that the timeshare regime established by the Declaration is a condominium subject to the Condominium Act, it is clear, as explained above, that Paragraph 21 of the Declaration could not authorize the declarant, or any of his successors, to encumber the timeshare interests of the individual owners. "[T]he provisions of the declaration must conform to the statutory requirements, and to the extent that they conflict therewith, the statute must prevail." *Winkelman v. Toll*, 661 So.2d 102, 105 (Fla.App. 1995). *See also Dunes South*, 459 S.E.2d at 479-480. Furthermore, because the mortgage violated title 28, sections 908 and 913 of the Virgin Islands Code, it is void. *See Eagle Lake*, 427 S.E.2d at 648.

---

[13] Declaration at 1. The portion of the leasehold submitted to the Declaration is described in detail in paragraph 1.B of the Declaration.

[14] *Id.* at paragraph 2.E. Paragraph 3 of the Declaration describes the apartment unit boundaries and the common elements and limited common elements appurtenant to each unit.

[15] *See* notes 2-5, *supra*.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the defendants' Motions to Dismiss should be granted. The defendants are owners of timeshare condominiums that were submitted by the declarant to the Condominium Act. The Act expressly prohibits blanket mortgages that encumber the interests of individual unit owners. Paragraph 21 of the Declaration and the subject mortgage both violate this prohibition. Because the Condominium Act prevails over Declaration provisions and mortgages that violate the Act, neither document effectively encumbered the interests of the defendants here. Without the mortgage, Pantheon's complaint fails as a matter of law to state a claim upon which relief can be granted.